[PHILADELPHIA, MARCH 27, 1830.]

Case of the Plan of the Third Division of the District of Kensington.

Rawle.<br>3r 445<br>134  414.

#### CERTIORARI.

The eighteenth section of the act of assembly, incorporating the Kensington District of the Northern Liberties, which authorises the commissioners to appoint one or more surveyors, who are required to survey and mark the lines of all the streets, &c. then open, and to lay out such other new streets, lanes, and alleys, &c. as they may deem necessary and convenient for a regular town plan; and gave them power, for these and other purposes, to enter upon the lands of any person or persons within the district, extends to all property within the incorporated limits, whether held by individuals or corporations; and consequently, that part of the *Germantown* and *Perkiomen* Turnpike Road, which is within the district, came within the scope of the authority vested in the commissioners.

CERTIORARI to the Court of Quarter Sessions of *Philadelphia* county.

The president, managers, and company, of the *Germantown* and *Perkiomen* Turnpike Road, removed to this court the order of the

(Case of the Plan of the Third Division of the District of Kensington.)

Court of Quarter Sessions of the county of *Philadelphia*, dismissing the exception filed by them to the plan of the Third Division of the District of *Kensington*, together with the proceedings thereon.

The following error was assigned in the proceedings of the court below:—

"By an act, passed the 12th of *February*, 1801, entitled, 'An act to enable the governor to incorporate a company to make an artificial road from the city of *Philadelphia* through *Germantown* to the ten mile stone on *Chesnut Hill*, and from thence to the new stone bridge over *Perkiomen Creek*, in the county of *Montgomery*, the courses and distances of the said road are prescribed, and the said President, Managers, and Company, are authorised and required to cause the said road to be laid out not less than fifty, nor more than sixty feet, and the level in no place to rise or fall more than four degrees; and are required to keep the said road in good and perfect repair, and generally, the control, direction, and right of the said road, are vested in the said President, Managers, and Company; and the mode of divesting their said right is specifically enacted and declared; notwithstanding which, by the said plan, the width of the said road is lessened by requiring footways to be laid out of the width of thirteen feet from each side of the said road, reducing the said width from sixty to thirty-four feet, and less.

"And the level and surface of the said road are required by the said plan, to be changed from the levels and surface originally established, according to law; *first*, by raising the sides of the said road or footways, in parts five feet and more above the present legal surface, and in parts of less and different height; and, *secondly*, by requiring the bed and surface of the said road to be raised and changed from the level and surface, so as aforesaid established and long continued, according to law.

"And the said President, Managers, and Company, did, therefore, except to the said plan; but the said Court of Quarter Sessions ordered their said exception to be dismissed, in which they allege manifest error in law."

*Chew* and *J. R. Ingersoll*, in support of the exception.—The question is, whether or not the act of incorporation of the *Kensington District of the Northern Liberties*, gives to the commissioners a right to alter the levels, &c., narrow the limits of the *Germantown* Turnpike Road; and thus, and in other respects, interfere with the vested rights of a pre-existing corporation. The impolicy and injustice of such an interference forbid the idea, that the legislature intended to give to the commissioners the power to encroach upon a road made under a charter of so old a date, and upon which such large sums of money have been expended. The *Germantown* and *Perkiomen Turnpike Road Company* was incorporated by an act of assembly, passed the 12th of *February*, 1801, which prescribes the width and the levels of the road, requires the company to make

(Case of the Plan of the Third Division of the District of Kensington.)

ditches and drains, and to keep the road in good order. The effect of the establishment of this "plan," will be to destroy many of the essential provisions of this act.   It will, by raising footways on each side, not only narrow the road from fifty to thirty-four feet, and take sixteen feet away from the jurisdiction of the company, but convert the road into a water course. The duties imposed upon the company are enforced by heavy penalties; and the consequence of applying the "plan" to the road, will be to expose the company to severe penalties for the non-performance of duties which it has become impossible for them to perform. The legislature never could have contemplated the extension of the proposed plan to a turnpike road previously made under an act of incorporation.   If they did, it was a violation of the constitution, because, it impaired the previous contract, made by the legislature with the company.

A part of this road passed through the *Northern Liberties*, and an application was made by all parties to the legislature, who, by an act, passed the 27th of *March*, 1824, authorised a cession of a part of the road by the company to the district.   The cases are precisely similar, and if, in the one, it was necessary to make a special application to the legislature, it is not easy to understand how, in the other, the commissioners were authorised to take away part of the road without such an application.

The court declined hearing *Dallas* and *Goodman* against the exception.

The opinion of the court was delivered by

Rogers, J.—In the eighteenth section of the act to incorporate the *Kensington District of the Northern Liberties*, the commissioners are authorised to appoint one or more surveyors, who are required not only to survey and mark the lines of all streets, &c. *then open*, but also to survey and lay out such other new streets, lanes, and alleys, &c. as they might deem *necessary* for a *regular* and *convenient town plan;* and for these and other purposes, they were vested with full power and authority to enter upon the lands of any person within the district. The intention of the legislature was, to give all the authority necessary to the commissioners, to lay out the town in the manner most convenient and useful to the inhabitants of the district; and in furtherance of this object, so highly beneficial to the citizens, they have vested in the surveyors full and plenary authority, liable to be reviewed and corrected in the manner therein prescribed.   The words of the act are sufficiently comprehensive to embrace all property within the incorporated limits, held either by individuals or corporations; and it would, I conceive, be against the spirit of the section, to exempt any property, whether real, or partaking of that character, within the district, from their control, as this would materially interfere with the intention of having their town regulated on a uniform, convenient, and regular plan.   As, then, the property of the company would seem to be embraced by

(Case of the Plan of the Third Division of the District of Kensington.)

the words, and spirit of the act, it is incumbent on them to show something peculiar in their case, from which to claim the benefit of an exemption from the general scope of the authority vested in the commissioners.

The President, Managers, and Company of the *Germantown* and *Perkiomen* Turnpike Road say, that they are not intended to be affected; because, it would interfere with a *vested right,* (which is not to be supposed without express words,) and they hinted, although the point was not much pressed, that it would impair the obligation of a contract, to take their property for public use. To this, it may be answered, the right of *individual property* is a *vested right,* as much so in the case of an individual, as a corporation, and that the appropriation of it to public use would be as much a violation of a contract in the one case as the other. Although the company is bound, as has been stated, under severe penalties, to keep the road in repair, yet if, as has been contended, this will be rendered impossible by the confirmation of the plan reported by the surveyors, that fact would, of itself, furnish a valid defence to a suit for the penalty. A non-compliance with the provisions of the act would be excused, by showing a subsequent appropriation of the property to public use. It is a fundamental principle of all government, that the rights of individuals must yield to the general welfare, and the only security of the citizen, (and in most cases it is an ample one,) consists in the constitutional provision: " That no man's property shall be taken or applied to public use, without the consent of his representatives, and without a just compensation being made." And in conformity to this article of the constitution, the legislature have guarded the interests of all concerned, by declaring, "That no street, road, lane, court, or alley, shall be opened and appropriated to public use, until the owner of the ground shall be compensated for the damages he may have sustained." They have also directed the manner in which the compensation shall be ascertained and paid, by a proceeding under the act of the third of *April,* 1804. Here there is a legislative remedy provided; for although the term owner or owners of the land, be used, and the company are not strictly the owners of the soil, but an easement merely; yet, we consider these words sufficiently broad to cover the case. For the purpose of affording an adequate remedy, to the party aggrieved, we are inclined to give this part of the section a liberal construction, as has been done in *Reese* v. *Addams,* 16 *Serg. & Rawle,* 40, which, although not precisely this case, resembles it in some of its features. The only difficulty which can arise is in respect to the form of proceeding, while even that, may be instituted in the corporate name, and we the more readily come to this conclusion, to avoid the multiplicity of suits which would be the consequence of suing in the name of the owners of the land, for the use of the company. We think it right to give the act such a construction as to secure to the inhabitants of the district the object they had in view, and at

(Case of the Plan of the Third Division of the District of Kensington.)

the same time, to guard the rights of the company from violation, and secure to them such compensation as they may be justly entitled to under all the circumstances. If, as has been suggested, the property of the company has been taken in contradiction to the directions of the act, it is such an injury as may be compensated in damages in the usual manner.

Proceedings affirmed.