[PHILADELPHIA, JANUARY 23, 1832.]

## CHEW *against* PARKER.

| 3r | 283 |
| f221 | ⁵646 |

Although a deed purporting to convey a title to land, cannot be given in evidence without some proof of title in the grantor, yet the rule does not apply in the same extent, to a deed containing merely an executory contract between the parties, for the future procurement and conveyance of a title to land.

The plaintiff having given in evidence thirty-seven patents dated the 12th *March*, 1795, to *J. P.* for certain lands in the county of *N.* which were the lands in dispute, and a deed dated the 12th *July*, 1795, for the same lands from the patentee to *J. W.* and a deed of previous date, viz. the 17th *March*, 1795, for the same lands from the said *J. W.* to the plaintiff, without any evidence to show, that *J. W.* at that time, had any interest in them or any prospect of acquiring any, and without showing under what arrangement, *J. W.* obtained the subsequent deed from *J. P.* the defendant, with a view to show, that *J. W.* obtained the deed from *J. P.* in pursuance and fulfilment of articles of agreement, which he had entered into with *W. P.* and *M. W.* on the 11th *September*, 1794, prior to the deed from *J. W.* to the plaintiff, offered the said articles of agreement in evidence, stating that he should also offer in evidence bonds and a mortgage given in pursuance of the said articles of agreement: *Held,* that the articles of agreement were admissible in evidence to show the origin of *J. W.*'s connection with these lands; what his interest was before and at the time he conveyed them to the plaintiff, and the terms and conditions upon which he subsequently obtained the title by conveyance from *J. P.*

A deposition of one, who, when it was taken, was not a party to or interested in the suit, but afterwards became so, is not admissible in evidence. But where the parties to a suit depending in this court, entered into a written agreement, "that the evidence which had been taken in the ejectment *depending* in the county of *I.* of *B. C.* v. *J. B.* and others, and also against *C. D.* shall be admitted to be read on the trial, saving all legal exceptions, which might have been made in those actions," it was *held,* that such deposition was admissible in evidence, though the action in which it was taken, was not *then depending,* but had been tried and determined before the date of the agreement; it appearing, that the suit in which the deposition was taken, was the only ejectment that *B. C.* had ever brought against *J. B.* and others in the county of *I.* and the deposition offered the only evidence taken in that suit.

Deeds, not shown to have any bearing upon the matter in controversy, are not admissible in evidence.

Where the judge, who tried the cause, stated to the jury, that he thought they would agree, that unless those persons who were interested in the land, and sold it to *J. W.* consented, and most explicitly, that he should have it clear of all claim on account of the purchase money, it would not be just or equitable, that he should have it so, the charge was *held* to be right, taken in connection with all the evidence given in the cause.

THIS was a feigned issue in the form of an action upon a wager, in which *Benjamin Chew* was plaintiff, and *Jeremiah Parker*, defendant, framed by the agreement of the parties for the purpose of trying the title to thirty-six tracts of land in *Jefferson* county in the state of *Pennsylvania*, and it was agreed by writing filed, that the decision of the questions, raised by the issue, should, in all respects, have the same effect upon the title to the lands in dispute, as if a verdict had been given in an action of ejectment.

On the trial of the cause before His Honor Judge KENNEDY, on the 23d of *February*, 1831, the plaintiff, in the first place, gave in evidence a deed from *Jeremiah Parker* to *James Wilson*, conveying to

(Chew *v.* Parker.)

him in fee simple, the lands in dispute for the consideration of thirteen thousand and twenty pounds nineteen shillings and eight pence, dated 12th *July*, 1795, acknowledged the 25th *July*, 1795, and recorded in the county of *Lycoming*, in which the lands were then situated, on the 18th *October*, of the same year. He then gave in evidence thirty-seven patents to *Jeremiah Parker* for the same lands, dated the 12th *March*, 1795, and a deed from *James Wilson*, conveying the same lands to *Benjamin Chew*, the plaintiff, in fee simple, for the nominal consideration of five pounds with special warranty and a covenant for further assurance, and containing also a stipulation, that patents should be taken out in the name of the plaintiff. This deed bore date, the 17th *March*, 1795, was recorded in *Northumberland* county on the 7th *September*, 1795, and in *Indiana* county, on the 23d *November*, 1818. Though the consideration expressed in the deed was only five pounds, it was proved, that the real consideration for the conveyance was the transfer by Mr. *Chew* to Mr. *Wilson*, on the 16th and 17th *March*, 1795, of stock of the *Banks of the United States* and *Pennsylvania* to the amount of eighteen thousand dollars. The plaintiff further proved by the deposition of *John Adlum*, that *William Parker* and *Moore Wharton*, whose connection with these lands will hereafter appear, had notice of the sale to Mr. *Chew* within a few days after it took place, and that the offices for public business were not opened in *Lycoming* county until the month of *November*, 1795.

After the evidence above stated had been given by the plaintiff, the defendant offered in evidence articles of agreement, dated the 11th *September*, 1794, between *William Parker* and *Moore Wharton* of the one part, and the said *James Wilson* of the other part, by which *Parker* and *Wharton* agreed to cause to be conveyed to *Wilson* seven large bodies or parcels of land, including the lands in dispute, at the price of one dollar per acre. By the agreement, patents were to be taken out in the name of *James Wilson*, who was to execute one or more bonds for the sum which the price of the lands would amount to, payable in five years from the 14th *May*, 1794, without interest, and to execute a mortgage on the same lands or on other lands of equal quantity and quality as a collateral security for the payment of the money mentioned in the bonds.

It was further agreed, that if the said *James Wilson* after having executed such mortgage, should at any time be desirous to have the same cancelled and to give another mortgage upon other lands equal in value thereto, he should be at liberty to do so, and the said *Parker* and *Wharton* and their assigns, should accordingly cancel the first mentioned mortgage, and accept such new mortgage in lieu thereof.

These articles of agreement were produced by the plaintiff upon notice from the defendant. The plaintiff's counsel objected to their being read in evidence, because they were between *William Parker* and *Moore Wharton* of the one part, and *James Wilson* of the other part, *Jeremiah Parker*, the owner of the land, not being a party

(Chew *v.* Parker.)

to them.   The objection was overruled by the judge, who permitted the articles to be read in evidence to the jury.

The defendant then gave in evidence a paper, (also produced by the plaintiff, on notice,) dated the 14th of *May*, 1794, signed by the said *Parker & Wharton* and *James Wilson*, endorsed " Agreement, *Parker & Wharton* with *James Wilson*," by which *Parker & Wharton* offered the seven bodies of lands afterwards enumerated in the articles of the 11th of *September*, 1794, for sale, to the said *James Wilson*, at the price of one dollar per acre, payable in five years from the 14th of *May*, 1794, without interest; the patents to be delivered clear of all disputes and incumbrances.

The defendant also gave in evidence the following documents, *viz.*

1. A mortgage dated the 14th of *October*, 1795, and recorded in *Northumberland* and *Lycoming* counties on the 20th of *October*, 1795, from *James Wilson* to *William Parker* and *Moore Wharton* upon the lands in dispute, and other lands enumerated in the articles of agreement already referred to, to secure the payment of bonds bearing even date with the mortgage from *James Wilson* to *Jeremiah Parker, William Parker* and *Moore Wharton*, amounting in the whole to the sum of twenty-five thousand one hundred and twenty-two dollars payable to *Jeremiah Parker*, and twenty-eight thousand five hundred and twenty-two dollars to *Parker & Wharton*.

2. The following bonds from the said *James Wilson, viz.* :

A bond to *Jeremiah Parker* dated the 13th of *July*, 1795, conditioned for the payment of ten thousand one hundred and twenty-two dollars, on the 14th of *May*, 1799.

One bond of the same date, to the same, conditioned for the payment of three thousand dollars, on the same day.

One bond of the same date, to the same, conditioned for the payment of six thousand dollars, on the same day.

One bond of the same date, to the same, conditioned for the payment of six thousand dollars, on the same day.

Two bonds of the same date, to *Parker & Wharton*, conditioned for the payment of six thousand dollars each, on the same day.

Two bonds of the same date, to the same, conditioned for the payment of three thousand dollars each, on the same day.

Two bonds of the same date, to the same, conditioned for the payment of two thousand five hundred dollars each, on the same day.

Two bonds of the same date, to the same, conditioned for the payment of two thousand dollars each, on the same day.

And one bond of the same, date, to the same conditioned for the payment of five hundred and twenty-two dollars on the same day.

The deposition of *William Parker* taken in the case of *Benjamin Chew* against *Joseph Barnett* and others, was then offered in evidence by the counsel for the defendant, in connection with an agreement entered into in this action, which contained the following clause: " That the evidence which has been taken in the ejectment depending in the county of *Indiana* for *Jefferson* county, of *Benjamin Chew*

(Chew *v.* Parker.)

against *Joseph Barnett* and others, and also against *Ira White*, shall be admitted to be read on the trial, saving all legal exceptions, which might have been made in those actions." At the time this deposition was taken, the deponant had no interest in the lands in dispute, but afterwards became interested in them under the will of *Jeremiah Parker*, who was his brother. The plaintiff's counsel having proved by an agreement exhibited to the judge, that the said *Jeremiah Parker* was the real defendant in the suit in which the deposition was taken, and that that suit was for part of the lands now in dispute, objected to the admission of the deposition in evidence, on the ground, that the deponent was the executor of the will of the said *Jeremiah Parker*, and the devisee of the lands in dispute; that he was by substitution, the actual defendant in the cause, and then present in court. His Honor, however, permitted the deposition to be read in evidence.

The defendant's counsel then gave in evidence the record of a *sci. fa.* and an *alias sci. fa.* in the county of *Lycoming,* on the mortgage given by *James Wilson* to *William Parker* and *Moore Wharton*, in which judgment was entered on the 30th *August*, 1803 ; and a writ of *levari facias* on the said judgment, returnable to *December* term, 1803, to which the sheriff returned, that he had sold the lands in dispute to *William Parker*, *Moore Wharton* and *Jeremiah Parker*.

A deed bearing date, the 7th *December*, 1803, from the sheriff of *Lycoming* county to *Jeremiah Parker*, for the consideration of three thousand five hundred dollars, was then offered in evidence by the defendant's counsel, and objected to by the counsel for the plaintiff, but the court overruled the objection and admitted the evidence.

The defendant having closed his testimony, the plaintiff after having given some evidence not now material, offered in evidence a deed bearing date, the 21st *September*, 1796, recorded on the 30th *January*, 1797, from *Josiah Hewes* and *Myers Fisher*, trustees of *James Wilson* and *James Wilson* to *George Eddy* and *Moore Wharton*, conveying divers large bodies of land, containing seventy-three thousand acres in *Lycoming* county, for a nominal consideration and for the sum of fourteen thousand seven hundred and fifteen pounds, paid to *James Wilson*, offering at the same time to show, that one half of the greater part, or the whole of the said lands had been shortly after conveyed for a nominal consideration to *William Parker*, the defendant, the other half remaining with *Moore Wharton*. This deed was objected to by the counsel for the defendant, and rejected by the court.

A mortgage dated 14th *June*, 1794, from *James Wilson* to *Charles Wolstencraft* and others, and the proceedings thereon in the Court of Common Pleas of *Lycoming* county, for the use of the said *William Parker*, were then offered in evidence by the plaintiff, accompanied by an offer to show, that all the lands embraced by the mortgage, had been conveyed for a nominal consideration to *William* and *Jere-*

*miah Parker.* This deed was rejected by the court on an objection to it being made by the counsel for the defendant.

The plaintiff's counsel, after having given in evidence the deposition of *William Anderson,* Recorder of *Bedford* county, showing that the last mentioned mortgage had been entered to be recorded by *William Parker,* who declared, that he was a party in interest to it, offered it again in evidence with the proceedings thereon; but the evidence was again objected to by the defendant's counsel and overruled by the court.

Some other testimony was given on the part of the plaintiff, which it is unnecessary now to state.

The evidence on both sides being closed, His Honor, Judge KENNEDY, after having minutely stated the facts, delivered to the jury the following

CHARGE:—I have said, Gentlemen of the Jury, that if no other testimony had been given in this cause than that which was given by the plaintiff in chief, or to establish his claim in the outset, he would have been entitled, in my opinion, to recover: but if the defendant, from the testimony given on his part, has satisfied you, that the deed of conveyance from *Jeremiah Parker* to *James Wilson,* dated on the 12th of *July,* 1795, was made without the purchase or consideration money being paid, and that it was made subject to or in pursuance of an agreement, that the land itself was still to remain liable for the payment of it, then it is clear that Judge *Wilson* did not under that conveyance obtain a title for the land discharged from the claim of *Parker* and *Wharton* or *Jeremiah Parker* to the purchase money. The first question then is, was the consideration money, that is, the thirteen thousand nine hundred and twenty pounds nineteen shillings and eight pence, equal to thirty-seven thousand one hundred and twenty-two dollars and sixty-two cents, mentioned in that deed, paid by *Wilson* to *Jeremiah Parker* or to any other person entitled to receive it? It is true, that the deed contains an acknowledgment by *Jeremiah Parker* of the receipt of this money, and a receipt for the same is subjoined to the deed of conveyance. But you must consider that this is almost the universal form, in which deeds for conveying lands, are made and executed, as well where the money is paid, as where only notes or bonds or a mortgage with notes or bonds are given or intended and agreed to be given afterwards. Such acknowledgment and receipt in the absence of direct testimony, showing that it was otherwise, or circumstances raising a contrary presumption, would be sufficient evidence of the consideration money having been paid. But still it is very slight evidence of the fact, when we know, that it is nearly the universal practice to give such an acknowledgment and receipt, whether the money be paid or not, and when we also consider, that it is not usual in making private sales of lands throughout the state to sell for cash to be paid in hand, but to allow a credit for a part of the purchase money at least. Be-

(Chew v. Parker.)

side positive proof of the purchase money not having been all paid
at or before the execution of the deed, when the deed appears to
to have been executed shortly after the making of the contract for
the purchase, the circumstance of the price being a very large sum
of money, such as the purchaser could not well have raised, in con-
nection with proof, that by the terms of the contract for the sale
of the land, the purchase money was not to be paid for five
years, although the deed was to be made as soon as the sellers
could get the title to the land perfected, would be most likely
sufficient to satisfy the minds of a jury, that the money was not
paid at the execution of the deed. But if, in addition to this, it
should appear, as in the present case, that bonds bearing date
the next day after the date of the deed of conveyance, and a mort-
gage dated about three months afterwards, were given by the pur-
chaser to the seller for the precise amount of the purchase money,
payable too on the very days fixed for that purpose in the original
contract of sale, could any jury entertain a doubt, that the purchase
money was not paid? Indeed, I do not understand the counsel
for the plaintiff to urge, that from the testimony given in this case,
the purchase money was paid by Judge *Wilson* at or before the
execution of the deed. The subsequent transaction between him
and *Parker* and *Wharton* and *Jeremiah Parker* show, I think, most
clearly, that it was not.

Then if it was not paid, did *James Wilson* take the thirty-six
tracts of land, conveyed to him by that deed from *Jeremiah Parker*,
freed and discharged from the purchase money? I think you will
agree, that unless those persons who were interested in the land and
sold it to him, consented and agreed most explicitly, that he should
have the land clear of all claim on account of the purchase money,
it would not be very just or equitable that he should have it so.

What evidence then have you that such was the agreement, that
is, that Judge *Wilson* should have these thirty-seven thousand one
hundred and twenty-two acres free from all claim by the sellers on
account of the purchase money?

In the first place it is argued, that by the original agreement of the
14th of *May*, 1794, or proposals for sale of these and other lands by
*William Parker* and *Moore Wharton*, no mortgage or any thing else
that would create a lien upon the land, was agreed to be given, be-
cause it is not so mentioned. It is manifest that as an agreement
stipulating and providing for any thing that would be necessary to be
done to carry the sale contemplated into execution, it was very im-
perfect, and that something more than is there expressed was under-
stood by the parties to be done. You will observe that a credit of five
years was to be given for the payment of the purchase money, but not
a word in these proposals about how or in what way the payment of
that purchase money shall be secured. No mention of even bonds or
notes being to be given for it. Can you believe that something of
this kind at least was not intended? Did you ever know an instance

of land being sold for any considerable sum of money and not to be paid for several years, that the deed of conveyance was made by the seller and delivered to the buyer without something more than such a paper as these proposals, taken to secure the payment of the purchase money ?

But if there were any doubt of this, the formal agreement between *William Parker* and *Moore Wharton* of the one part, and *James Wilson* of the other, dated on the 11th of *September*, 1794, completely removes and does it away. In this agreement, it is expressly agreed and provided, that not only bonds, but a mortgage shall be given upon the land itself or other land of equal value to secure the payment of the purchase money.

Here, however, it is contended by Mr. *Ingersoll*, that inasmuch as by the terms of this agreement, the mortgage was not *necessarily* to be on those lands, but to be given on other lands at the election of Mr. *Wilson*, the agreement would not give or, continue any lien upon the land after the conveyance of it, without the execution of the mortgage, because when executed, it might not be on this land at all. This argument or distinction, although ingenious, I think, is not sound. The land sold is the only land that is designated for the mortgage. The articles of agreement do not describe any other particular land upon which a mortgage may be given for this purpose, and until *James Wilson* should point out other lands, and show also that he had a good title for them clear of incumbrances, and that they were of equal value, and execute a mortgage upon them to the sellers, the operation of the articles of agreement would be precisely the same as if no such alternative in favour of Judge *Wilson* had been introduced into them. If the alternative provided for in the articles of agreement had been that bonds or a mortgage should be given at the election of Mr. *Wilson*, and bonds only had been given, the effect might have been different.

But it is worthy of remark, that the sellers appear to have been anxious to have the payment of the purchase money secured by a mortgage, and according to the terms of the articles of agreement, in no event was the mortgage to be dispensed with. The mortgage seems to have been made a *sine qua non.* He might change the lands upon which he gave the mortgage, but that he must give in addition to bonds. *After so much earnestness discovered in the articles on the part of the sellers to have a mortgage as well as bonds, you will probably think that pretty clear proof ought to be given of this right, thus provided for, being relinquished, before you would be warranted in coming to the conclusion, that it was.*

As evidence that the taking of a mortgage under these articles of agreement, was relinquished and surrendered by the sellers, it is said that bonds were executed and given by *James Wilson* to them for the purchase, on the 13th day of *July*, 1795, the day after the execution of the deed by *Jeremiah Parker* to him, and that no mortgage was given until the 14th *October*, 1795, three months after-

wards. It is true, that the dates of the deed, the bonds and the mortgage are so; but it does not follow that they were executed and delivered on the days of their respective dates. Indeed, it is most probable, it was not so. The deed of conveyance for instance is dated on the 12th day of *July*, 1795, but not acknowledged by *Jeremiah Parker*, the grantor, until the 25th of that month, thirteen days afterwards. Now it is very improbable, that it was delivered by him to *James Wilson* before it was acknowledged. It may have been, that it was drawn or written on that day, and that the bonds were written on the day following. At all events if you will examine the bonds, you will be of opinion, I think, that they are not signed with the same pen and ink with which they are filled up, and that they were therefore written at a different time from that of signing them, yet the date is evidently written with the same pen and ink with the other part of the filling up. It often happens, that a deed of conveyance is executed and acknowledged months before its delivery, yet it is of no effect whatever until delivered. Now *William Parker* and *Moore Wharton* might have gotten this deed executed and acknowledged by *Jeremiah Parker*, and have taken charge of it and kept it until the 14th of *October* following, when they received the mortgage from *James Wilson*, and might have delivered to him at the same time, the deed of conveyance for the land in dispute from *Jeremiah Parker*. One thing is certain, that this deed was not put on record until the 18th day of *October*, 1795, four days after the date of the mortgage. The recording of this is the first time that we have any unequivocal evidence of its being in the hands of *James Wilson*, and the mortgage, you will observe, was recorded the second day after the deed, which is evidence of its being in the possession of *Parker* and *Wharton*, and some evidence perhaps of the deed and the mortgage having been delivered at the same time.

It is very certain that in the execution of this transaction between the parties, they seem to have been careless about inserting dates or attending to them. They have recited the bonds in the mortgage as being of equal date with it: now that is certainly not so. The bonds produced are dated, not on the 14th day of *October*, 1795, the day of the date of the mortgage, but on the 13th day of *July* preceding. This is no doubt a mistake, because the bonds produced correspond in every other particular with those recited in the mortgage. But suppose that the deed of conveyance and the bonds were executed and delivered two or three months before the mortgage was executed and delivered, does that furnish any evidence of its ever having been relinquished by the sellers? I must confess, it does not appear so to me. If it had been so, why should *James Wilson* afterwards have executed the mortgage upon these lands to the sellers, when he had conveyed them away to the plaintiff, Mr. *Benjamin Chew?* I say, if the *Parkers* and *Wharton* had actually relinquished to Judge *Wilson* their right to have a mortgage upon the land in dis-

pute and had agreed, that he should have it acquitted of all claim from them, *James Wilson's* giving them a mortgage afterwards, when he had conveyed away the land to Mr. *Chew,* would be irreconcilable with every principle of honesty.   Judge *Wilson* being considered a man of integrity and respectability at this time and so admitted by the plaintiff's counsel, it necessarily follows, that he gave this mortgage afterwards, because he was bound by his articles of agreement to do so.   Again it is alleged, that these proposals and articles of agreement signed by *William Parker* and *Moore Wharton* and by Judge *Wilson,* being found among his papers, show that they were delivered up to him, and that all claim or right under them had been relinquished by the sellers, or they would not have given them up.   This may be true, but how so?   The probability is, that they gave them up after they got the bonds and the mortgage and not until then, which secured the sellers in every thing that they had any right to claim under the articles.   The mortgage gave them the land as a security for the payment of the purchase money.   Under this view of the case, I consider the deed of conveyance from *Jeremiah Parker* of these lands to *James Wilson,* and the mortgage again from *James Wilson* to *William Parker* and *Moore Wharton,* in part for themselves, and in part in trust for *Jeremiah Parker,* although done at *different times or dates,* as but parts of one and the same transaction, and that *James Wilson* did not thereby acquire a title to the land discharged from the purchase money, and that according to the agreement for the sale of it to him, he could not acquire such without paying the purchase money.   If so, it necessarily follows, that no other right or title under this conveyance could enure to the benefit or use of Mr. *Chew,* the plaintiff, than what Mr. *Wilson* thereby obtained.

It is urged also, that the proposals of the 14th *May,* 1794, which are signed by *William Parker* and *Moore Wharton* and *James Wilson,* may be considered as a letter of attorney from *William Parker* and *Moore Wharton* to *James Wilson,* authorising him to sell these lands, and that under this authority he sold them to the plaintiff, Mr. *Chew.* It seems to be admitted, that they are not in the usual form of a letter of attorney, but that is not material, as no particular form is required.   Although no particular form is required, yet it ought at least to appear from the face of the instrument, that it was designed and intended to be a letter of attorney.   It contains no words granting or delegating any power or authority to *James Wilson,* which is of the essence of a letter of attorney.   It is signed by *James Wilson,* which was certainly unnecessary if intended to be a letter of attorney.   I have no hesitation in saying, that it cannot properly be considered as a letter of attorney, authorising *James Wilson* as the attorney in fact of *William Parker* and *Moore Wharton,* to sell the land in dispute.   But if it were a letter of attorney, a sale of the land by *James Wilson,* unless made in conformity to it, would not be good.   Now in these proposals or what the plaintiff's counsel has

been pleased to call a letter of attorney, there is a certain price per acre fixed upon the land to be sold, that is one dollar per acre, yet Mr. *Wilson* sold this land to Mr. *Chew* for less than fifty cents per acre. This would be sufficient to avoid the sale if it were a letter of attorney.

*James Wilson*, who was a distinguished lawyer himself, never appears to have treated it as a letter of attorney, nor from any thing that has been disclosed, to have thought so. In making the sale to Mr. *Chew*, he did not pretend that he was making it, or conveying the land, as the attorney of any one.

It is also alleged by the plaintiff's counsel, that these proposals if not a letter of attorney amount to an agreement between the parties who have signed their names thereto; that when he (Mr. *Wilson*,) sold to Mr. *Chew*, he no doubt showed them to Mr. *Chew* as evidence of his right to sell the land in dispute; that Mr. *Adlum* probably had a reference to the proposals, when he testified that a writing was produced from which a description of the land was read : that inasmuch as nothing is said about a mortgage in these proposals, or of the purchase-money of the land being to be secured by such means, Mr. *Chew* had therefore no reason to apprehend that the land would come to Judge *Wilson*, incumbered with the purchase-money, and that in this way the sellers of the land to Mr. *Wilson*, put it in his power to deceive Mr. *Chew*; and, although they did not intend any injury to any one, and may have been in this respect innocent, yet as they have been the occasion of the loss that must inevitably fall now upon the shoulders of them or Mr. *Chew*, it ought to be on theirs. Though this proposition is correct in the abstract, it becomes necessary to examine whether it be well applied here by the plaintiff's counsel. It is certain that when Mr. *Chew* bought the land of Judge *Wilson*, and took a deed of conveyance of him for it, he had no title for it. Mr. *Chew*, I think, had no reason to conclude either from an inspection of the proposals, dated *May* 14th, 1794, or from the articles of agreement, dated the 11th of *September*, 1794, that the sellers were not to be secured in some way, in the payment of the purchase-money, at the rate of one dollar per acre, which was not to be paid for five years; but, on the contrary, had good reason to conjecture, at least, that as the payment was deferred so long, that kind of security which was the least liable to fail would be required and given, *to wit*, a mortgage, and we find it was so. Mr. *Chew* was certainly bound to know before he purchased, whether Judge *Wilson* had any title or claim to the land, and if he had any, what it was ; and if it was not a legal title, but imperfect, it was his duty to inquire and to inform himself what would be necessary to be done to make it perfect. It is certain, that if Judge *Wilson* had any claim to the land at the time he sold it to Mr. *Chew*, it was a very imperfect one, and that Mr. *Chew* bought it with all its imperfections. He bought it subject to have the purchase-money secured in the way provided for by the articles of agreement. All this Mr. *Chew* was

bound to know; it was his duty to inquire. If he had inquired of the person or persons from whom Judge *Wilson* was to obtain the legal title, he would have known too. If they, upon such inquiry, had misrepresented the matter to him, and he had acted upon the faith of their representation, and a loss had ensued, this might have changed the complexion of the case. If Mr. *Chew* did not inquire, and did not know the full extent of the agreement between the *Parkers* and *Wharton* and Judge *Wilson*, it was his own fault, and as the loss has arisen from his own neglect or want of due vigilance, it ought to fall upon him.

In what I have said to you in respect to the giving of the mortgage, being done in pursuance of the original contract, I have only noticed the documentary testimony, which appears to be sufficient, but in addition to this, you have the positive testimony of *William Parker*, that the conveyance from *Jeremiah Parker* to Judge *Wilson*, as also the mortgage from Judge *Wilson* to *W. Parker* and *M. Wharton*, were executed and given in pursuance of that contract.

The circumstance of the parties' having deviated from the letter of the contract for the sale and purchase of these lands, in some particulars, such as the patents being taken out in the name of *Jeremiah Parker* instead of *James Wilson*, makes no difference in the effect, because it did not prejudice Mr. *Chew* in the least, and *Wilson* was satisfied to take it in that form. In either way the land was still to be liable for the payment of the purchase-money, and it does not appear to me that Mr. *Chew* has any good cause of complaint on this account.

It is also contended that Mr. *Chew* is a *bona fide* purchaser for a valuable consideration, without notice, and therefore ought to be protected. This principle is only applicable where a person purchases land of another, who appears from the face of all the title papers, to have the perfect legal title to the land, nothing being on record to show the contrary, or to excite suspicion. This was not the case with Judge *Wilson* when he sold and conveyed the land in dispute to Mr. *Chew*. Judge *Wilson* had not the legal title in him when he sold the land to Mr. *Chew*. He at most had only a contract with *Parker* and *Wharton* for the purchase of it, and this being the case, Mr. *Chew*, I again repeat, was bound to know it. He did know that Judge *Wilson* was not invested with the legal title, and Mr. *Chew* bought at his peril.

Judge *Wilson* did not become invested with the legal title to the land in dispute, until he received the deed from *Jeremiah Parker*, dated the 12th of *July*, 1795. Mr. *Chew* did not buy and pay his money after this, but in the spring before. It cannot therefore be said that Mr. *Chew* is a *bona fide* purchaser for a valuable consideration, without notice, as he would have been, if after the 12th of *July*, 1795, when Judge *Wilson* was in possession of the deed of conveyance from *Jeremiah Parker*, and before the 14th of *September* following, he had

bought the land and paid his money for it without notice of *Parker* and *Wharton*, or *J. Parker*'s claim upon it for the purchase-money.

The case of *Chew* v. *Barnett*, 11 *Serg. & Rawle*, 389, referred to, and decided by the Supreme Court of this state, is decisively in favour of the defendant, *William Parker*, on this point. I must confess that I have not seen in what particulars this case has been made clearly different from that of *Chew* v. *Barnett.*

The jury found a verdict for the defendant, and the plaintiff's counsel moved for a new trial, for which they filed the following reasons, *viz.* :

1. The court erred in permitting the defendant to give in evidence the articles of agreement dated *September* 11th, 1794, between *William Parker* and *Moore Wharton* and *James Wilson.*

2. The court erred in permitting the defendant to give in evidence the deposition of *William Parker*, then present in court, he being the executor and devisee of the said *Jeremiah Parker*, and substituted as defendant in this cause.

3. The court erred in refusing to allow the plaintiff to give in evidence a deed from *Josiah Hewes* and *Myers Fisher*, trustees of *James Wilson*, and *James Wilson* to *George Eddy* and *Moore Wharton*, dated 21st of *September*, 1796, for the consideration of fourteen thousand seven hundred and fifteen pounds, paid to *James Wilson;* the counsel for the plaintiff having offered at the same time to show by deeds then produced, that all the lands thereby conveyed, were conveyed shortly after for nominal considerations, to *William Parker* and *Moore Wharton.*

4. The court erred in refusing to allow the plaintiff to give in evidence a mortgage dated 14th *June*, 1794, from *James Wilson* to *Charles Wolstencraft* and others, and the record of the proceedings thereon in the county of *Lycoming*, the same having been offered to show that all the lands contained in the said mortgage were for the use of, and came into the hands of the said *Jeremiah Parker* and *William Parker* for nominal considerations.

5. The court erred in instructing the jury, that, notwithstanding the alternative in the articles of agreement between *Parker* and *Wharton* and *James Wilson*, that other lands equal in value might be mortgaged, yet these lands in dispute remained bound by the articles with *Parker* and *Wharton* and *James Wilson*, after they had been conveyed to *James Wilson* by *Jeremiah Parker*, and until *Wilson* should actually tender a mortgage of other lands equal in value; and that the plaintiff was also bound by the said articles, and bound to know of them.

6. The court erred in charging the jury that the land was, and continued liable for the purchase-money, unless the sellers agreed most explicitly that it should not be so.

7. The counsel for the plaintiff contended, that there was evidence

·(Chew *v.* Parker.)

to go to the jury, that any right to receive a mortgage on the thirty-six tracts in dispute from *James Wilson*, had been waived or relinquished by the parties, and the personal responsibility of *James Wilson* substituted in lieu thereof. But the learned judge who tried the cause, did not leave this fact to the jury, but instructed them that the right to receive the mortgage had not been waived or impaired.

··8. The court erred in charging the jury that, although the articles of agreement with *Parker* and *Wharton* and *James Wilson*, stipulated that the patents for these lands should be taken out in the name of *James Wilson*, and the same were afterwards, on the 12th of *March* following, taken out in the name. of *Jeremiah Parker*, yet that made no difference in the effect upon the plaintiff.

·S. *Chew* and J. R. *Ingersoll* for the plaintiff, cited *Lessee of Peters* v. *Condron*, 2 *Serg. & Rawle*, 83. *Faulkner* v. *Eddy*, 1 *Binn.* 190. *Hoak* v. *Long*, 10 *Serg. & Rawle*, 9. *Stewart* v. *Kingley*, 17 *Johns. R.* 158. *Richardson* v. *Stewart*, 2 *Serg. & Rawle*, 84. *Chess* v. *Chess*, 17 *Serg. & Rawle*, 409: *Mills* v. *Eden*, 10 *Mod.* 488. *Cheeseborough* v. *Millard*, 1 *Johns. Ch. R.* 413. *Gill* v. *Lyon*, *Id.* 449. *Bank of Pennsylvania* v. *Winger*, 1 *Rawle*, 302.· *Nailer* v. *Stanley*, 10 *Serg. & Rawle*, 450.

*Chauncey* and *Binney* for the defendant.

·The opinion of the court was delivered by

KENNEDY, J.—The first reason· assigned in this case for a new trial, is, that the court permitted the articles dated *September* 11th, 1794, between *William Parker* and *Moore Wharton* of the one part and *James Wilson*, Esq. of the other, to be given in evidence. The objection to this was, that it did not appear from any evidence previously given on the trial of the cause, that *Parker* and *Wharton* had any right, title or interest in the land, which they thereby agreed to sell and have conveyed to *Wilson ;* that without proof of some interest or right in the land being first shown to have existed in *Parker* and *Wharton*, the articles of agreement were not admissible in evidence, and the cases of *Faulkner* v. *Eddy*, 1 *Binn.* 190, *Peters* v. *Condron*, 2 *Serg. & Rawle*, 83, and *Hoak* v. *Long*, 10 *Serg. & Rawle*, 9, recognizing and establishing the rule, that a deed is not evidence without proof of title in the grantor, have been relied on to support the objection. Now it is evident, that this rule, although perfectly correct as respects deeds of conveyance or of grant, bargain and sale, cannot be applicable in the same extent to a deed containing merely an executory contract between the parties for the future procurement of a. title to land and conveyance of. the same. It is not like the case of a deed of conveyance, the design and object of which are to transfer from the grantor a right or interest in the land to the grantee, which in the very nature of things cannot be, if the grantor has no right or interest whatever to or in the land. That some right or interest did exist in him, ought therefore to be first shown, other-

(Chew *v.* Parker.)

wise the deed of conveyance is inoperative, and the time of reading it in evidence unnecessarily .spent.   In order to make an executory contract effectual between the parties, it is not necessary that the party, who thereby covenants to convey certain lands to the other party at a subsequent day, should have any right to them at the time of entering into the covenant.   He is at liberty and has the right to bind himself to do any thing that is not forbidden by law, or to bind himself to abstain from doing any thing that the law has not enjoined him to do.   If he have no title to the lands at the time of making the contract to convey, he thereby makes it his duty to get one, which is not considered at all impracticable in the eye of the law, before the time, at which he has covenanted to convey the lands, shall come round.   If he should fail to procure a title and to convey it according to his stipulation, he will be liable to an action upon his covenant for a breach of it, which could not be sustained without giving the deed containing such covenant in evidence upon the trial of the cause.   It is, however, contended here, that the articles of agreement were offered and given in evidence for the purpose of showing that *James Wilson,* from whom the plaintiff derived his title to the lands in controversy, derived his claim to them from *William Parker* and *Moore Wharton,* and that the articles could be no evidence of this, unless it were first shown, that these persons had an interest in or right to the lands.   Here it is proper to recur to and notice that the plaintiff had given in evidence thirty-seven patents dated the 12th of *March,* 1795, from the Commonwealth to *Jeremiah Parker,* brother of *William Parker,* for the thirty-six thousand acres mentioned in the articles of agreement, and being also the lands in controversy in this suit, as lying in *Northumberland* county, on the waters of *Sandy Lick* creek, also a deed of conveyance dated the 12th of *July,* 1795, for these lands from *Jeremiah Parker,* the patentee, to *James Wilson,* and likewise a deed of conveyance of previous date to this, *to wit,* the 17th of *March,* 1795, for these same lands from *James .Wilson* to *Benjamin* Chew, the plaintiff in this suit, without offering any evidence to explain or account for *James Wilson's* having conveyed these lands to Mr. *Chew* before it appeared from the plaintiff's showing that he had any interest in or right to them, or even the prospect of getting any, and without showing under what arrangement it was that *Wilson* obtained this subsequent deed of conveyance from *Jeremiah Parker.*   The defendant to supply this omission, and to account for the seeming futility of *James Wilson's* conveying lands to the plaintiff for which it did not appear that he had even the colour of title, alleged, that *Wilson* obtained this deed of conveyance from *Jeremiah Parker* in pursuance and fulfilment of those articles of agreement which he had entered into with *William Parker* and *Moore Wharton* on the 11th of *September,* 1794, and that this would still further appear from bonds and a mortgage, which were executed and given, as provided for in the articles of agreement, and would also be given in evidence.   With a view then

(Chew *v.* Parker.)

to show the origin of Mr. *Wilson*'s connection with these lands, what his interest in them was at the time and before he conveyed them to Mr. *Chew*, as also the terms and conditions upon which he obtained the title subsequently for them by the deed of conveyance from *Jeremiah Parker*, the articles of agreement were offered in evidence by the defendant's counsel and permitted by the court to be read. This court is of opinion, that these articles of agreement were properly admitted to be given in evidence to the jury; for according to the doctrine and principles laid down by this court in *Chew* v. *Barnett and others*, 11 *Serg. & Rawle*, 389, Mr. *Chew*, the plaintiff in this cause, could have no other or better title under his deed from *Wilson* than *Wilson* himself acquired by his deed of conveyance subsequently obtained from *Jeremiah Parker*, which, if made subject to the terms and conditions set forth in the articles of agreement, rendered them not only relevant and admissible against *James Wilson* in case he had been the plaintiff here, but likewise against Mr. *Chew*, who claims under him.

The second reason is, that the deposition of *William Parker*, who is not only the party on record to this suit, but the real party in interest, was improperly admitted to be read in evidence to the jury.

This deposition was taken under a rule of court in an action of ejectment brought and tried in the Court of Common Pleas of *Indiana* county of this state, by the plaintiff, Mr. *Chew* against *Joseph Barnett* and others, for a part of the same land, the title to which was to be tried in this action by the agreement of the parties. At the time this deposition was taken, *William Parker*, the deponent, had no title or claim to any of these lands. His interest in them has arisen since that, under the will of his brother, *Jeremiah Parker*; and were it not for the agreement of the parties, which was entered into for the purpose of making *William Parker*, the deponent, a party to this action, as well as for declaring and explaining the design and effect of the judgment, which should be finally given in it, the deposition according to the rule laid down by this court in *Chess* v. *Chess*, 17 *Serg. & Rawle*, 409, ought not to have been admitted in evidence. In this agreement, however, the following clause is contained: " That the evidence, which has been taken in the ejectment depending in the county of *Indiana* for *Jefferson* county, of *Benjamin Chew* against *Joseph Barnett and others*, and also against *Ira White*, shall be admitted to be read on the trial, saving all legal exceptions, which might have been made in those actions." It has been argued by the plaintiff's counsel, that this agreement cannot be considered as extending to the admission of the party to the suit, to make testimony for himself, which would be to violate some of the first rules of evidence, which not only exclude the parties on record, but every interested person in the suit, from becoming witnesses in support of their interest on the trial of the cause. And again, that the agreement by its very terms embraces only suits *then pending*, but the action, in which *Parker*'s deposition had been taken, was not then pending,

(Chew *v.* Parker.)

for it had been tried and determined some considerable time before the date of the agreement.

There is certainly great force in these objections. I must confess, that at the time of the trial I had great doubt as to the propriety of admitting this deposition, but upon more full deliberation, I feel satisfied, that under the agreement of the parties, and the particular circumstances connected with the suits mentioned in the agreement, it was rightly received. This agreement provides expressly for the admission of the evidence taken in the ejectments in the county of *Indiana,* of *Benjamin Chew* against *Joseph Barnett and others,* and although the agreement mentions it as a case then depending, yet it was the only ejectment that Mr. *Chew* ever had brought in that county against *Joseph Barnett and others,* and the deposition of *William Parker* was the only evidence taken in it; so that there was no other case between these same parties either depending or determined, but this one, to which the agreement of the parties can be applied, and no evidence taken in it, to which the agreement could have a reference, but the deposition of *Parker.* In the absence of all testimony going to show, that this ejectment of *Benjamin Chew* against *Joseph Barnett and others* was introduced into the agreement either by mistake or fraud, we, in order to give effect to the agreement, are compelled to consider it as one of the actions intended to be referred to by the parties; and the deposition of *William Parker,* as it was the only one taken in the cause, as the evidence that was referred to in connexion with the cause, and provided for, to be given in evidence on the trial of this cause, unless it could have been objected to in the cause, in which it was taken, which does not appear that it could. This construction may not be treating the participle " depending," which is the word used by the parties in the agreement, according to its strict grammatical sense, as it is in the present tense, but then a grammatical construction is not to be regarded, when it would, as in the present case, render that inoperative, which was clearly intended to be otherwise.

The third and fourth reasons involve the same principle, that is, whether the deeds offered in evidence and rejected, were relevant to the issue trying, and could, as evidence, have any legitimate bearing upon the matter in controversy.

These deeds or documents contained upon their face no reference or allusion whatever to the thirty-six thousand acres of land, the title to which is the great matter in question here, nor do they appear to have any bearing or connexion with any agreement between *William Parker* and *Moore Wharton* with *James Wilson,* or between *Jeremiah Parker* and *Wilson,* relating to these lands, or the sale of them, or price of them, nor yet to have grown out of the indebtedness of *James Wilson,* for and on account of the purchase of these thirty-six thousand acres. Neither was any evidence offered to show that they had any such connexion or relation to the matter in controversy in this cause; although it was said by the plaintiff's counsel that the

(Chew *v.* Parker.)

object was to prove that *James Wilson* had made satisfaction for the price of these thirty-six thousand acres conveyed to him by *Jeremiah Parker.* Thus it appears, that those deeds offered in evidence, were not shown to have any connexion with, or bearing upon the cause. They were not even between the same parties to any of the transactions out of which this controversy has grown. Again, these deeds were given long before the purchase-money due from *Wilson* to the *Parkers* and *Wharton* became payable; and beside all this, it appeared, that the bonds which had been given by *Wilson* for the payment of the purchase-money of the thirty-six thousand acres were still in the possession of the obligees or their assignees, which could not have been the case, consistently with what was alleged, or rather suggested by the plaintiff's counsel, when they offered these deeds in evidence; for if the deeds so offered had been founded upon an accord for the satisfaction of these bonds, or the debt for which they were given, they would have probably, as certainly they ought to have been, given up to *Wilson.* The admission of such evidence, might have had a tendency to mislead, confound and distract the minds of the jury, but could have furnished them with no light upon the matters in issue, and was therefore properly rejected.

The fifth reason is to the charge of the court to the jury as to the effect of that part of the agreement of the 11th of *September,* 1794, between *Parker* and *Wharton* with *Wilson,* which provides for the giving of a mortgage to secure the payment of the purchase-money, either upon the lands sold, or upon other lands of equal value to be furnished by *Wilson* at his election. There was nothing wrong in the charge given to the jury upon this point. This court considers the charge in this particular, a true exposition of the agreement.

The sixth reason also arises out of the charge to the jury, where they were told that I thought that they would agree, that unless those persons who were interested in the land, and sold it to *Wilson,* consented, and most explicitly, that he should have the land clear of all claim on account of the purchase money, it would not be just or equitable that he should have it so. This part of the charge must be considered with reference to all the documentary evidence given in the cause, on the part of the defendant, in relation to his claim upon the land sold as a security for the payment of the purchase-money; and this court is of opinion, that when the articles of the 11th of *September,* 1794, the deed from *Jeremiah Parker* to *James Wilson,* the mortgage from *Wilson* and the bonds given by him, which are recited in the mortgage to be of even date with it, to secure the payment of the purchase-money, are all examined, they will evidently appear to be links of the same chain, and must be considered component parts of the same transaction, and that every thing done subsequently to the date of the articles, was done in execution and in pursuance of the articles of agreement, because there is nothing else to which these subsequent transactions can be referred, to render them intelligible: That this is a conclusion of law, growing out of this

(Lawall *v.* Kriedler.)

documentary testimony, and hence the mortgage is to be considered as given under the provision contained in the articles for that purpose ; and that the difference in the dates of the deed of conveyance from *Jeremiah Parker* to *James Wilson,* and the mortgage from *Wilson,* did not furnish sufficient ground for the jury to presume that the sellers of the lands to *Wilson* had agreed to accept of the bonds as their only security for the payment of the purchase-money from him, and to relinquish their right and claim to the mortgage, contrary to the express terms of the agreement.

The opinion of this court expressed as to the sixth reason, disposes of the seventh as being also insufficient.

There is nothing in the eighth reason, which is the last.

In answer to the attempt on the part of the plaintiff's counsel to distinguish this case from the case of *Chew* v. *Barnett,* 11 Serg. & *Rawle,* 389, the court think proper to say, that the great leading features of the two cases are the same. The circumstance of the articles of agreement of the 11th of *September,* 1794, being given in evidence on the trial of this cause by the defendant instead of the plaintiff, as in the case of *Chew* v. *Barnett* and others, can make no material difference. The effect and bearing of these articles upon the case, from their nature and tenor must be the same, whether given in evidence by the one party or the other. The principles, therefore, laid down by this court in the case of *Chew* v. *Barnett* and others, are strictly applicable to, and govern the present one.

The motion for a new trial is dismissed, and judgment entered upon the verdict.

Rogers, J. and Ross, J. dissented.

New trial refused, and judgment for the defendant on the verdict.