On the Merits.
The opinion of the Court was delivered by
Levy, J.
To the account and tableau of distribution, filed by the executors of Daniel Edwards, numerous oppositions were filed. The lower court which tried them, rendered judgment on the 5th June, 1880, which was amended by the same court on 21st June, 1880, allowing to W. E. Murphy, executor, the sum of $727.15, as commissions, and rejecting and disallowing the claim of J. W. Marshall, co-executor, for commissions, and reserving to W. E. Murphy his right to claim his *221 commissions oil tlie sum of $35,000, now claimed in tlic suit in the Third District Court vs. J. D. Edwards; reducing the item in favor of J. L. Tissot, Esq., for attorney’s fees, (as assented to by all parties in interest) to $1500; reducing the items of funeral expenses from $265 to $200; recognizing as privileged creditors, Gauthreaux, sheriff, and Handy, ex-slieriff, 'respectively for $13.20 and $16.80; and as ■ordinary creditors, John Nelson, tutor, for $1635.65, with legal interest from J 5th April, 1878; Eugene Garrean for $322.20, with 8 per cent, interest from 22d April, 1878; Phillippe Faivre, for $1163.90, with 8 per cent, interest from 22d April, 1878, and Alfred Jacob, for $917.15, with 8 per cent, interest from 22d April, 1878; decreeing that Albert Taylor be placed on the tableau for the amount of his two mortgage notes, to be paid by preference out of the proceeds of the property to Mm mortgaged, say for the sum of $11,000, with interest at 8 per cent, per annum, from 9th June, 1878, together with 5 per cent, attorney’s fees thereon, and the further sum of $255, for premiums of insurance paid by him, and ordering the tableau, as thus amended, to be homologated.
On the trial of the rule on motion for a new trial, this judgment was further amended, by decreeing that the interest on the mortgage debt to Albert Taylor, cease as of date of sale of the mortgaged property, viz : 7th of June, 1879; that the interest allowed in favor of Phillipo 'Faivre, Alfred Jacob, John Nelson, tutor, and E. Garreau, cease as of date October 8th, 1879,'the date of filing account; ordering payment of costs and expenses in completing act of sale to Albert Taylor; costs of clerk; reservation by execution of $25 for future costs of clerk, and $10 for costs of writing of decree and the payment of balance pro rata to ordinary creditors, and rejecting the item of $52.50, traveling expenses of Mrs. Edwards.
Orders for appeals were granted to Mrs. Eliza J. Nelson, wife, etc., and to John Nelson, tutor, but an appeal was taken and perfected only by Nelson, tutor.
The oppositions which are now urged to the accounts are as follows:
Faivre and Jacob both oppose the claims of Albert Taylor on the turn mortgage notes of $5500. They plead against the notes the prescription of five years.
John Nelson, tutor, opposes the item of $1735.65, with legal interest from 15th April, 1878, for which he is recognized as a creditor in the account, and claims that it should be amended by recognizing him as a creditor for $1829.80, with 5 per cent, interest from 30th July, 1878, to 8th October, 1879. He also contends that the executors should be charged with the rents of certain property of the succession for 6& months, at $80 per month.
*222 He also contends that the executors are liable for and should he charged with two notes for $2500 each, due by J. D. Edwards to D. Edwards; also that the executors should be held liable for and charged with the value of certain household furniture and movables worth $1500; the household furniture and office furniture, $250; which, he alleges, belonged to Daniel Edwards, the deceased, although claimed by and remaining in the possession of his surviving widow.
He also opposes the allowance of Murphy, executor, of $727.15, and alleges that it should be reduced to the sum of $289.05. He finally opposes the claim of Albert Taylor on the said mortgage notes, and holds that the executors should be required to account for the entire purchase price of the mortgaged property sold and purchased by Taylor, $13,000.
E. Garreau opposes the allowance of executor’s commissions, and claims that it should be reduced to $289.65, due Murphy, one of the executors, who is alone entitled to commission. He opposes the item of $240.15 auctioneer’s charges, and insists that it should be reduced to the sum of $87.
He opposes the allowance, as expenses of last illness, amounting to $596, alleging that the item of $231 physicians’ bills, is not privileged, because it is not shown that they were registered; that the item, ot $182.78, loanedto the deceased during Ms last illness is not a privilege, that the railway fare from New York to New Orleans of J. W. Marshall and Mrs. Edwards, ($105) is not a proper charge against the succession and should be disallowed; that the fare on body of deceased from New York to New Orleans, ($85) should be embraced in the cost of funeral expenses.
He opposes the item for funeral expenses (including the last named item of $85), amounting to $349.65, on the ground that, if the plea of prescription to the notes held by Taylor is overruled, the succession will be insolvent, and this charge should be reduced to $200. He also opposes the claim of Albert Taylor on the two mortgage notes, urging that they are prescribed.
As to the executor’s commissions, we concur with the judge a quo in Ms disallowance of commissions to Mr. Marshall, one of the executors, who was also a legatee under the last will of the testator. He falls directly under the inhibition contained in Art. 1686, R. C. C.: “Testamentary executors, to whom the testator has bequeathed any legacies or other gifts by Ms will, shall not be entitled to any commission, unless the testator has formally expressed the intention that they should have the legacies over and above their commission.” In the will of Daniel Edwards, there is no such formal expression of intention by the testator and there is no renunciation by the executor and legatee. The com *223 missions to which Mr. Marshall would liavo been entitled, but for the ■obstacle mentioned, accrue to the succession, and Mr. Murphy is entitled only to his half of the 2£ per cent, commission; i. e., 11 per cent. We think the executor should he allowed his commissions upon the amount administered upon by him. He has waived and expressly disclaims any light to commissions on the property sold by the sheriff and the amount of the claim against Murphy, and the claim of $5000 on J. D. Edwards, for the collection of which no steps have been taken, say $12,000 x $1850 x $9000 ; which leaves $72,022.40, amount of inventory, less $48,850 — 858,172.40, on which he should receive as commissions, at 11 per cent.., say $627.15. 2 R. 445; 12 L. 608; 3 R. 283 ; 12 R. 155 ; 7 A. 475; 3 A. 624; 12 A. 334.
The claim of John Nelson, tutor, should be increased from $1635.65, to the sum of $1829.80 with interest, as allowed in the judgment appealed, the costs incurred in the suit for the enforcement of the mortgage in favor of the minors, being a portion of the real indebtedness of the succession in this matter.
We do not think that the executors are liable either for the rents of the property, or for the notes for $2500, referred to in the protest in the inventory, with which opponents seek to charge them, and the reasoning of the Judge a quo is satisfactory to our minds on these subjects. So also as regards the alleged liability of the executors for the furniture. The evidence in the record satisfies us that it was not the property of the deceased, Daniel Edwards.
The most important question submitted for our decision in this case is the plea of prescription, wliieh is opposed to the claim of Albert Taylor on the two mortgage notes of $5500 each, dated on June 9th, 1870, and maturing one year after date. This question has been very earnestly and ably argued on both sides, orally and in briefs. The lower court held that prescription had not'accrued on the notes. The circumstances are as follows:
As just stated, these notes matured one year after date, including the days of grace allowed, on the 12th June, 1871. On the 12th day of June in the several years, 1871, 1872, 1873, on the 9th June, 1874, 1875, the following endorsements were made on the notes: “ By mutual consent the payment of this note is postponed to 9-12 June (1872,) all interest on the same having been settled up to that date. (Signed) Daniel Edwards, per James D. Edwards.” The endorsements respectively extending payment one year from dates of endorsements.
On July 7th, 1877, the following endorsement was made: “ By mutual consent, the payment of this note is postponed.to 9-12 June, 1878, all interest being presently paid to that day.” (Signed) Daniel Edwards, by W. E. Murphy.
*224 As stated by counsel for the opposition: The point ¡it issue is this: does the law, as laid down in Art. 2278, R. C. C., require that the authority of the specially authorized agent, mentioned in that Article, should be proved by written evidence, or may it be proved by parol ?
The Article reads thus : “ Parol evidence shall not be received to prove any acknowledgment or promise of á party deceased to pay any debt or liability, in order to take such debt or liability out of prescription, or to revive the same after prescription has run or been completed. But in all cases mentioned in this Article, the acknowledgment or promise to pay shall be proved by written evidence, signed by the party who is alleged to have made the acknowledgment or promise, or by his specially authorized agent or attorney in fact.”
We have been at great pains in considering the reasons on which opponents rely to sustain their plea of prescription, and cannot agree with them in the construction of the law for which they contend. The law forbids proof by- parol of any acknowledgment or promise of a party deceased to pay: any debt or liability', in order to take it out of prescription or to revive it after prescription has accrued, but it contains a further clause which explicitly defines what kind of ¡in acknowledgment or promise shall be made in ■ order to operate as an interruption or renunciation, to-wit: that “ such acknowledgment or promise to pay, shall be proved by written evidence, signed by the party.malring it, or by his specially authorised agent or attorney in fact.” This, to our mind, is clear and full, and contains no ambiguity, is involved in no doubt and the intention and reasons of the law-maker are distinctly set forth. In short, it manifestly required that these acts of acknowledgment or promise to pay' should be evidenced by' writing done unexecuted during the lifetime of the party debtor, and this written acknowledgment shall be in existence, signed by him or his special agent or attorney'-, prior to his death. We are asked to add to the law an independent provision and to eke out the intention of the law-maker by' declaring that, where the acknowledgment or promise to pay is written and signed by one specially authorized for that purpose by- tin* deceased in his lifetime, it shall not be sufficient, unless the authority thus to act shall have been given in writing by the deceased. To do this would be to assume legislative functions, and, in the absence of ambiguity of expression, not to construe the intention of the legislature, not to pass upon the latent meaning on account of such ambiguity, not to render clear what by its verbiage needs judicial construction, but virtually to make a new enactment, and enlarge the statute by the addition of a new rule, and the adoption of a proviso explanatory' merely, but original in all its features.
It is not contended that the mandate to acknowledge and consent to *225 extension of payment of a note or other liability is required to be in writing. Those mandates which are required to be written are expressly enumerated in writing, and this not one of them. “ Inelusio iinius est exelusio alter his.” Besides, the authorities on the subject are conclusive on this point. An analysis of the article which wo have quoted above satisfies us that it is only contemplated thereby, that there should have been a written acknowledgment or promise to pay, and that this should have been made either by the debtor himself or his specially authorized agent or attorney in fact. As we have before said, no written authority was necessary for the constitution of such special agent or authority. The verbal authorization justified him in making the written acknowledgment, just as a verbal authorization would be sufficient for him to purchase or sell a movable for his principal, and being at the time the legally authorized agent of the principal, the acknowledgment was the acknowledgment of his principal, and having been made in writing, is a full compliance with the plain requirements of the law. If it had been intended that the authority to the agent or attorney should be in writing, the law would have so declared, and in the absence of such declaration, we cannot supply a new rule. The plea of prescription is not to be supplied by the Court, nor is its effect to be enlarged by implication. 6 La. 587; 2 A. 890; 21 A. 477; 2 A. 290 ; 22 A. 445 ; 5 R. 473; 14 A. 514; 4 A. 509.
Wherefore, it is ordered, adjudged and decreed, that the judgment appealed from be amended, by allowing the claim of John Nelson, tutor, for the sum of $1,829.80, with legal interest from April 15th, 1878, until 8th of October, 1879, the date of filing of the account, by reducing the commissions of W. E. Murphy to the sum of $627, and, in all other respects, said judgment appealed from be affirmed, at -the costs of the succession of 1). Edwards as to the opposition of John Nelson, tutor, in both courts, and the other opponents, appellants, to pay the costs of their several oppositions in both Courts.