Rogers, J.
after stating the facts, delivered the opinion of the court, as follows:—
It has been properly admitted by the counsel for the plaintiff that the legacies given by James Lewis, to his two daughters, are *42 charges upon the land devised to James and Curtis, and it is also conceded that they still remain unpaid. The question is, who is entitled to the money, the legatees, who have the lien on the land, or Lewis Reese, the assignee of James Lewis, and whom I shall consider, for the purposes of this argument, as standing precisely in the same situation as his assignee, James Lewis. In order, correctly to determine this matter, it is necessary to consider what is the nature of the damages recovered in this case. By the 10th section of an.act of assembly, passed the 8th of March, 1815, entitled, “An Act to incorporate a company, to make a lock navigation on the river Schuylkill,” it is provided, “ That if any persons shall be injured by any dam or dams being erected, and the president, managers and company cannot agree with the owner or owners, on the compensation to be paid for the injury, proceedings shall be had, as is directed in the 11th section of the act.”
In the 11th section it is enacted, “ That the president, managers and company shall have power and authority, by themselves or their superintendants, engineers, artists and watermen, to enter in and upon, and occupy all land which shall be necessary and suitable for erecting a lock, sluice or canal, doing as little damage as possible, and there to dig, construct, make and erect such lock, sluice or canal, satisfying the owner or owners thereof.” If they cannot agree, the section points to the mode of proceeding which has been adopted in this case.
It is the duty of the jury to ascertain and report to the court, what damages, if any, have been sustained by the owners of the ground, by reason of the lock, canal or sluice passing through the land. They also value the land, and in doing so, take into view the advantage to the owner, from the said navigation passing through the land.
Where the injury to the premises is of a mere temporary nature, such as entering upon the contiguous land, taking and carrying away stone, gravel, sand or earth, the 12th section provides a different mode of proceeding. In such case, the company is directed to repair breaches, make amends for the damages, and pay for the materials taken away.
By a recurrence to the 10th, 11th and 12th sections, it will be seen that the legislature have carefully and wisely distinguished the ease of a mere trespass or temporary injury to the freehold, from an occupation of the land, or an injury or privilege permanent as the land itself.
When the proceedings are under the 10th and 11th sections, the company become pro tanto, purchasers of the freehold occupied by them, or at least of a privilege,- which, in judgment of law, may be eo-extensive with, and permanent as the land itself.
Under the 12th section, it is a mere compensation for an injury done, and for materials, not attended with a permanent occupation of the premises.
*43 With these distinctions steadily in view, there is not so much difficulty in the determination of the important principle raised in this record. The damages were assessed under the 10th and 11th sections, and were intended as a compensation for the land, the price of the privilege of swelling water on the land of James Lewis, the devisee, who took the property, cum onere, charged with the payment of the legacies, to his two sisters. James Lewis became the owner of the fee simple, by the will of his father, and by the same instrument, his sisters became equally entitled to their legacies, charged on the land. The constitution declares, “ That no man’s property shall be taken, or applied to public use, without the consent of his representatives, and without just compensation being made.” As the rights of James Lewis are protected by this clause of the constitution, with equal reason are we required to secure the vested rights of his sisters, who are equally the objects of the testator’s bounty. In this case, the property has been taken under the authority of the legislature, upon a fair compensation being made by the company. They have substituted the money for the land, and can it be supposed that the legislature (if they had the power) intended to divest the vested rights of creditors, from a real security into a personal one. The injustice of this, is most manifest in the case now under consideration; the more so, by supposing a case which may readily occur. A. has a mortgage against B., on a house and lot, to nearly the value of the property. It is necessary that the canal should pass directly through the site of the house, and that it should be pulled down or removed. By the doctrine contended for by the defendants in error, the mortgagee would lose his security, and would have but a personal remedy against the mortgagor. This surely is not a sound construction of the act.
This differs from the case of an ordinary purchase; for there, the creditors would still have their lien on the land, in the hands of the purchaser. This being intended for public use, policy requires that the lien should be divested, but at the same time, not at the expense of any persons interested, who have the same lien on the money, that they had on the land itself.
The proceeding to obtain compensation, must be in the name of the owner or owners of the land, by the express words of the act of assembly. The company must look to them, it is true, and a payment by the company, to the devisee, would be a protection to them, for they are not bound to see to the application of the money, unless, perhaps, on express notice. That, however, is not the question. Here, the money is in gremio legis, and we have the lien creditors asking us to protect their rights, which will be absolutely destroyed, if the money be suffered to pass into the hands of the owner of the land, or his assignee.
The plaintiff demands the money, not as a trustee for the lien creditors, but with the intent to apply it to an entirely different *44 purpose, under the trust and conditions of the deed of assignment.
In this view of the question, I ana fortified by the case of the president, managers and company of the Schuylkill Navigation Company v. Thoburn, 7 Serg. & Rawle, 418. It was there decided, that none but the owner, or owners, can sustain the proceedings against the company. It also establishes the principle, that the proceeding, udder the 10th and 11th sections, is for an injury done to the realty; that the finding of the jury is a compensation, or the price of a privilege to swell the waters to a particular height, for an indefinite time; it also expressly takes the distinction between a proceeding under the 10th and 11th, and under the 12 th section of the act.
Although the owner of the land is the party, in whose name the suit should be carried on, yet it by no means follows, that he has the absolute control of it. He is a trustee, for the benefit of all persons interested. Prima facie, they would be bound by his acts; for it is presumed, that in protecting his own, he will also protect their interests. There is great convenience and policy, and indeed justice, in making the owners of the land, the persons with whom the contracts should be made, and in whose names, suits should be instituted. It prevents multiplicity of suits, while, at the same time, courts of justice will take care, that the rights of all who are interested in the proceeds of the land, shall be protected.
I understand, that the lien of the creditors will be much more than the two thousand dollars, in the hands of the prothonotarjq, so that under the principles laid down in the above opinion, there can be no difficulty in the distribution of the money. If there should be any conflicting claims among the lien creditors themselves, the court are not to be considered as intimating any opinion between them. We merely decide, that the plaintiff, Lewis Reese, is not entitled to the money.
Judgment reversed.