## Deckert's Appeal.

Money, for the amount of which a judgment was recovered by a proceeding in court, being claimed by different persons, the defendant, without any rule or order of court, paid it to the Prothonotary, to be disposed of by the court. *Held*, that such payment was to the officer in his official capacity, and the sureties in his official bond were liable for the faithful application of it.

THIS was an appeal by Elijah Deckert from the decree of the Orphans' Court of *Berks* county. The opinion of the court contains a full statement of the case.

*Strong*, for the plaintiff in error, argued that the proceedings of the court did not exhibit any controversy about the fund; hence there was no necessity for an order or rule by which it was brought into court, nor was any such made. The defendants in the judgment, who were a corporation, were willing to pay the money and let the parties contend for it between themselves, and for this purpose they selected Mr Addams, the prothonotary, and paid it to him, as a mere stakeholder, without either the consent of the litigant parties or the court. We say, therefore, that Mr Addams had no power to involve the court as a depository of the fund, when they had nothing pending before them by which they could make a disposition of it; and therefore he received it in his private capacity, and is not liable on his official bond.

*Smith* and *Hoffman*, contra. The recovery of the money was by a proceeding in court, and in all cases, the court have the control over the judgment recovered, so as that it shall be made available to the person entitled to it, who is not always the party plaintiff. Here the money was paid in discharge of the judgment; it was paid into court, and noted upon the record of the court, which is notice to the world of its entire efficacy to discharge the debt. What, then, is the value of the official bond of the officer, if it do not protect parties under such circumstances?

The opinion of the Court was delivered by

ROGERS, J.—James Lewis made his last will and testament, and among other things, devised in fee-simple to his sons James and Curtis a tract of land in the county of Berks, charged with the payment of certain legacies, to which the present claimants are entitled. James conveyed his moiety of the tract to his brother Curtis, and Curtis filed a petition in the Court of Common Pleas of Berks county, claiming damages from the Schuylkill Naviga-

[Deckert's Appeal.]

tion Company for an injury done by the company to the land. An inquisition was had, and the inquest assessed the damages at $2500. An appeal was entered, and the parties compromised for $2000, which was paid by the company, as appears on the record, in the following manner : " January 10th 1825, the sum of $2000 paid by Samuel Baird and Charles Evans, Esq., counsel for the defendants, to John Addams, prothonotary, to be disposed of as the court directs." The reason this money was so paid was, that the legatees claimed the whole or the right to participate in the fund, and because it would be unsafe to permit it to be paid to the owner of the land, who was insolvent. Nothing can be plainer than that the money was paid into court by the counsel, and received by Addams in his official capacity, as the legal organ of the court. The entry on the record clearly shows this, and such seems to have been the understanding of all engaged in the transaction. Nor would there have been any doubt of this fact, if the present state of things could have been anticipated ; for there is no motive for the conduct of those who were intrusted with the management of this business, nor can it be explained on any natural principles, or any other supposition. The money is subject to the disposition of the court, which is inconsistent with the idea that it was deposited with the prothonotary as a common stakeholder ; as, on that hypothesis, it would not be under their control.

Two objections have been urged against the decree by which the legatees are permitted a *pro rata* share of the assets as specialty creditors. 1. That the court had no power to order the money to be paid into the court : and 2. That the money was paid without a rule or any authority from the court. It must be admitted that the business has been conducted with very little regard to form ; and were it not from the circumstances attending the case, both objections would be decisive. But, let it be observed, this case does not come within the class of cases at common law, which regulate the practice of bringing money into court. Those are cases of contract, and do not apply to damages for injuries in the nature of a nuisance or a trespass. *Tidd's Prac.* 672. This case has a much wider base, for it takes its rise from the equitable power of the court, and is indispensable, to prevent injustice. The owner of the land, who was insolvent, had the legal right to receive the money from the company, and payment to him would have been a good payment without notice of the equitable interest. But although he was the owner of the land, yet in respect to the legacies charged on the land, he was a trustee for others who had an equitable lien on the money. Their rights would have been destroyed if the money had been suffered to pass into his hands. It therefore comes under the head of preventive justice ; a beneficent and highly useful branch of chancery jurisprudence. As a Court of Chancery would restrain the company from paying the money over to the insolvent owner of the land, so, upon the

same principles, and for the same reason, our court, clothed with chancery powers, exercised without scruple this necessary authority. It does not certainly appear that the money was paid to the prothonotary in pursuance of a rule of court. It is very likely no rule was obtained, or no motion made; but if a party does voluntarily what he may be compelled to do, it is good. This procedure was intended for the benefit of all parties. All have acquiesced in it, at least we have no complaint from any quarter. The money is at the disposal of the court, which it would not be if the prothonotary is to be considered a common stakeholder. The claimants of the money have been diligently pursuing it ever since it was paid to the prothonotary, and have been anxious to prevent it from going into the hands of Curtis Lewis or his assignees. *Reese v. Addams*, (16 *Serg. & Rawle* 40).

It remains to be observed, that money so paid must, from the necessity of the case, be received by the prothonotary, who is the officer of the court, and who alone can be its depository. Unless he receives it, it must be received by the court itself, which cannot be tolerated. And, in accordance with this, is the invariable practice. In some counties, where it is convenient and safe, the custody of money paid is regulated by rules of court, which require that the money be deposited in the name of the prothonotary, in some designated bank, subject to his order, countersigned by the court and allowed by them. But this practice, it is very obvious, cannot prevail in all the counties, for want of a convenient place to keep the money; and hence it follows that the prothonotary must be the depository in his official capacity. It is one of the duties of his office, for which he and his bail must be liable; for the condition of the bond is, that he will well and truly, and in all things execute and perform the duties of his office. The appellees, therefore, to whom the money was adjudged, having a remedy on the official bond of the prothonotary, must be viewed in the light of specialty creditors, and, as such, they are entitled to a *pro rata* dividend of the fund.

Decree affirmed.