## BAKER v. WOOD

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

No. 162. Argued January 21, 1895. — Decided March 18, 1895.

In determining whether the judgment plaintiff and real owner of an assigned judgment is estopped to assert his ownership as against a second assignee, on the ground that the second assignee occupies the position of a purchaser for value in good faith and without notice and in reliance on the apparent ownership, the amount of the consideration paid by him is an important fact.

When such amount is greatly disproportionate to the true value of the judgment, that fact may authorize the inference that the claim to have paid value is a pretence; and it is further important, as bearing on the questions of notice and of good faith.

In such case the interest of the second assignee of the judgment, if recognized, should be limited to the amount he actually paid and the measure of the estoppel also limited accordingly.

THIS was a bill filed in the Circuit Court of the United States for the District of Colorado on October 23, 1886, by Lucien Baker against E. M. Hulburd, Daniel E. Parks, N. P. Seeley, and Samuel N. Wood, praying that defendants Seeley,

Wood, and Parks be restrained from in any manner selling, transferring, or disposing of a certain judgment recovered by Baker against the board of county commissioners of Lake County, Colorado, and from demanding payment of the same from the board until the final bearing of the cause; and that, upon final hearing, an assignment of the judgment by Hulburd to Wood, and also an assignment by Baker to Hulburd, be cancelled; and for general relief. It appeared that on November 12, 1883, Baker recovered a judgment in the Circuit Court of the United States for the District of Colorado against the county of Lake for the sum of $16,054.27. In this suit Hulburd was attorney for plaintiff and Parks attorney for the county of Lake. Some time thereafter Baker instituted proceedings in the Circuit Court to compel payment of the judgment, but on account of the amount of taxes that had already been levied in that county, the court refused to order the county to levy a tax, and the judgment stood unsatisfied and in full force and effect against the county of Lake until about May 20, 1886. It is charged in the bill that defendants Parks and Hulburd, about this time, combined to procure the assignment of the judgment to some other person who, it was contended by them, could effect a settlement and collection thereof. Hulburd thereupon applied to one Higginbotham, residing in Colorado, who was then, and at all times had been, the agent of Baker in the prosecution of the suit, to obtain an assignment by Baker to Hulburd, on the theory that Hulburd with the aid of Parks could procure the levy of a tax to pay the judgment. And Baker, on the recommendation of Higginbotham, executed an assignment of the judgment to Hulburd, couched in the following terms:

"LEAVENWORTH, KANSAS, *May 25th*, 1886.

"For value received I hereby sell, assign, transfer, and set over to E. M. Hulburd all my right, title, interest, claim, and demand of, in, and to the within-described judgment and the money due and to become due thereon, and authorize him to sue for and collect the same at his own proper cost and expense.

"LUCIEN BAKER."

This Baker forwarded to Higginbotham, with a declaration of trust to be executed and delivered by Hulburd to Higginbotham for Baker on the delivery to him of the assignment, which declaration was in the words and figures following:

"Whereas Lucien Baker has this 25th day of May, 1886, executed and acknowledged and delivered to me an assignment of his judgment against Lake county board of county commissioners, Colorado, Gen. No. 1279, which said judgment was rendered and recovered against the said board of county commissioners of the county of Lake in the State of Colorado, in the Circuit Court of the United States for the District of Colorado, on the 12th day of November, 1883, for $16,054.00; and whereas such assignment is so made to me for convenience in the collection of the same; and whereas said Lucien Baker still retains as heretofore the ownership and control of said judgment: Now, therefore, in consideration of the premises, I do hereby acknowledge the receipt of such judgment as aforesaid this 28th day of May, 1886."

Hulburd executed and delivered this instrument, and Higginbotham delivered Baker's assignment to Hulburd. Thereupon Hulburd delivered the assignment to Parks, who procured the same to be filed with the papers in Baker's suit in the Circuit Court on June 11, 1886, and the assignment was noted upon the judgment docket of the court. About June 19, defendant Seeley, acting for himself and defendant Wood, obtained from Hulburd an assignment of the judgment from Hulburd to Wood for the sum of $2500 then paid therefor. Hulburd took the money and within a few days disappeared from the State. The assignment was as follows:

"For value received I do hereby sell, assign, transfer, and set over unto S. N. Wood, of Denver, Colorado, all of the right, title, interest, claim, and demand which the plaintiff, Lucien Baker, or I have of, in, and to the said judgment above described, a transcript of which is hereto annexed, and authorize and empower him, the said assignee, to collect the same at his own proper cost and expense.

"E. M. HULBURD."

At the same time Hulburd executed and delivered to Seeley a receipt in these words:

"LEADVILLE, COLO., *June 19th*, 1886.

"Received of N. P. Seeley, for S. N. Wood, twenty-five hundred dollars in full payment of sum paid for judgment of Lucien Baker against county of Lake, which judgment I hold and own under an assignment from said Baker to me.

"E. M. HULBURD."

It was conceded that the sale of the judgment by Hulburd to Seeley and Wood was a fraud upon Baker, and Baker contended that Wood and Seeley had notice of the fraud and were, in fact, parties to the transaction.

When Baker was informed of the alleged sale of the judgment, and about August 5, he called upon Wood and told him that Hulburd had no right to sell the judgment; that it was not his, and was only in his hands for collection. Wood refused to talk with him about it, saying that he had bought the judgment after having taken legal advice; that it was his; that plaintiff could not get it without a law suit, and that if he wanted a law suit to pitch in. On October 22, 1886, the board of county commissioners passed an order accepting the offer of Wood, assignee of the judgment, to discount from the face of the same twenty-five per cent, in consideration that the county should levy an annual tax of two mills on the dollar to apply on account until the judgment was paid; and directing the levy and collection of such tax and the payment of the judgment to the extent of seventy-five per cent thereof. Before this date the board had been notified by Baker that the judgment still belonged to him.

The bill charged a combination between Wood, Seeley, Parks, and Hulburd to defraud Baker of his judgment.

On hearing the Circuit Court dismissed the bill on the ground, as is stated, that Baker, having clothed Hulburd with the apparent ownership of the judgment, was estopped from asserting any interest therein as against Wood and Seeley who

occupied the position of *bona fide* purchasers for value without notice.

Mr. *Henry M. Teller*, (with whom was Mr. *Clinton Reed* on the brief,) for appellant.

Mr. *Edward O. Wolcott*, (with whom were Mr. *Joel F. Vaile* and Mr. *William W. Field* on the brief,) for appellees Wood and Taylor.

Mr. CHIEF JUSTICE FULLER delivered the opinion of the court.

In *King* v. *Doane*, 139 U. S. 166, 173, it was stated as the general rule that "if in an action by an indorsee against the maker, a negotiable note is shown to have been obtained by fraud, the presumption, arising merely from the possession of the instrument, that the holder in good faith paid value is so far overcome that he cannot have judgment unless it appears affirmatively from all the evidence, whether produced by the one side or the other, that he in fact purchased for value," while if the fact is established that he did so, "he will be entitled to recover unless it is proved that he purchased with actual notice of defect in the title, or in bad faith, implying guilty knowledge or wilful ignorance."

But in respect of the assignment of choses in action, not negotiable, the assignee takes subject to the equities between the debtor and the original creditor subsisting at the time of the assignment, or when notice is received thereof. Where, however, equities between the original assignor and a subsequent assignee, or entirely in favor of third persons are involved, and the unconditional power of disposition has been entrusted by such assignor to his assignee, the principle of estoppel applies in favor of purchasers in good faith, and without notice. *Judson* v. *Corcoran*, 17 How. 612, 615.

The effect of the assignment of a judgment at common law was merely to transfer an equitable title, and the assignee was not authorized to bring an action thereon in his own

name. We are aware of no statute of Colorado permitting the assignment of a judgment so as to vest title in the assignee, but there is a provision in the Code of that State, (Code Civ. Proc. § 3,) that suit should be brought in the name of the real party in interest, and it is contended that the effect of this is to unite the legal title with the equitable ownership in the instance of such an assignment. Nevertheless, the question in this case is, whether the real owner of a judgment, the plaintiff therein, must fail of relief as against an assignee of that judgment, to whose assignor plaintiff had in form assigned it, thereby furnishing him with the indicia of title, because estopped to assert his ownership on the ground that such second assignee occupies the position of a purchaser for value in good faith and without notice, in reliance on the apparent ownership. The fraud committed on complainant by Hulburd is conceded, and the inquiry relates to the defence of a valuable consideration, paid in good faith, and without notice.

The amount of the consideration is under some circumstances important in determining whether within the rule on the subject the purchaser paid value, for the amount paid may be so disproportionate to the real value of the security purchased that the claim to have paid value will be treated as a pretence and the security as having been obtained without paying anything for it; and it is also, and more commonly, important as bearing upon the question of notice and good faith. *King* v. *Doane, supra.* Here the judgment was for $16,054, with interest at ten per cent from November 12, 1883, and the amount paid was $2500. While there was evidence tending to show that the judgment was not worth its face, nevertheless the disproportion is so great as to form a significant element in the transaction. Moreover, it must be remembered that Hulburd was Baker's attorney, and had recovered the judgment in question as such. When, therefore, the attorney of record entertained, as his client's assignee, the offer of such a sum, the law imposed upon the proposed purchasers the burden of inquiry, and their conduct is to be tested accordingly.

Without attempting to recapitulate the evidence a brief reference will suffice to indicate the ground for the conclusion at which we have arrived. Seeley testified that Hulburd had previously offered him the judgment for fifty or sixty cents on the dollar; that he so informed Wood, and Wood suggested its purchase, but he told Wood that Hulburd talked too much; that he was absent from the State for a time, and, on his return, Wood told him that he had just closed the trade for the judgment, but that he had taken time to look the matter up; and that he asked Seeley to investigate, and, if he found there was nothing wrong, to pay $2500 and take the judgment. The result of Wood's testimony is that the only person who acted as his agent in buying the judgment was Seeley, who was buying it for himself and Wood. But Seeley also testified that before the purchase was made: "I asked Hulburd, in so many words, before witnesses, 'Now, you know you are a little uncertain, and I want you to tell me if there is any reason on the face of the earth why you have not full power to dispose of this judgment and whether it is not yours?' He said it was his, and went on to explain why it was and how it came to be in his possession and all that. He said he had worked for Higginbotham and Barnes, had been in Barnes' litigation up there with —— and others, which I knew to be a fact, and that they had paid him but a very small sum; that for four years he had carried on their business, and that Barnes settled with him out of this, and the explanation looked as though there might be something in it. It was a good explanation to me. . . . He said he had attended to their litigation there, and had lived cheap, and had nothing and got along the best way he could, and that he had always promised him that out of this he should be paid."

Although the witness also claimed that he supposed Hulburd to be the absolute owner of the judgment, we think the reasonable conclusion is that Hulburd represented that he held it for the collection of fees, which the receipt of $2500 might be regarded as covering.

Granting, then, that Hulburd was clothed with apparent

ownership, yet that was qualified by the representation, and the measure of the operation of the estoppel was limited accordingly. The doctrine invoked is purely equitable and ought not to be extended, under circumstances like these, beyond permitting the person misled to recover indemnification. *Campbell* v. *Nichols,* 33 N. J. Law, 81, 88 ; *Grissler* v. *Powers,* 81 N. Y. 57. The extent of the loss which Seeley and Wood would sustain, if the truth of the representation were denied, would be the money they had paid, and to that it appears to us their interest in the judgment must be confined in the most favorable view that can be taken of the position they occupied. And, upon the whole, as Baker put it in the power of Hulburd to act as he did, that result probably best accords with the equities of the case. The assignments should be cancelled and Wood and Seeley's administrator decreed to account for the amounts received, less the amount paid, with interest.

*Decree reversed and cause remanded with a direction to enter a decree for complainant in conformity with this opinion.*