## C. H. VENNER CO. v. URBANA WATERWORKS.

### KIRBY v. CITY OF URBANA.

(Circuit Court, S. D. Ohio, W. D. November 6, 1909.)

### Nos. 5,773, 5,805.

1. WATERS AND WATER COURSES (§ 200*)—WATER COMPANIES—FURNISHING WATER TO CITY—CONTRACT—SUBSTANTIAL PERFORMANCE.

 Under a contract between a water company and a city for the furnishing of water to the city for fire purposes, which required the company to maintain a certain pressure at the hydrants, and provided that in case

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

It failed to comply with the contract it should be served with notice, "and from and after service of such notice" rental should cease and not again begin to accrue until the deficiency was remedied, the city cannot avoid the payment of rental on the ground that a test made by it within three months before the expiration of the contract showed that the pressure was not up to its requirements, where no notice of the fact was served on the company, and especially where, at prior tests, the pressure had also been below that required, but the city had continued to accept the service without objection, and it was also shown that to maintain the full pressure required would seriously injure the private water service, which was dependent on the same pumps.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 274; Dec. Dig. § 200.*]

**2. WATERS AND WATER COURSES (§ 203*)—WATER COMPANIES—FURNISHING WATER TO CITY—COMPENSATION.**

The receiver of a water company furnishing water to a city for fire purposes without contract as to price is entitled to recover, as a fair compensation for the service, a just proportion of the operating expenses, taxes, and cost of administration paid by the company, and of a just and reasonable return on the cost of reproducing its plant and its going value.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 290–299; Dec. Dig. § 203.*]

**3. WATERS AND WATER COURSES (§ 203*)—WATER COMPANIES—REASONABLE RATES.**

The receiver for a water company authorized to increase the rates to be charged to private consumers for water furnished.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 290, 292; Dec. Dig. § 203.*]

In Equity. Suits by the C. H. Venner Company against the Urbana Waterworks, and by Robert W. Kirby, receiver, against the City of Urbana. Decree for complainants.

Thos. J. Frank and Thornton M. Hinkle, for complainants.

George Waite, L. D. Johnson, and C. B. Heiserman, for defendants.

THOMPSON, District Judge. The bill filed August 21, 1903, in case No. 5,773, is in the nature of a creditor's bill. The complainant recovered a judgment against the defendant, and execution was issued thereon and returned unsatisfied for reasons stated in the bill, and thereupon this suit was brought, on behalf of the complainant, and all creditors and stockholders of the defendant who may choose to become parties thereto, invoking the court to administer as a trust fund the property rights and franchises of the defendant, the Urbana Waterworks, a corporation, for the benefit of its creditors and stockholders, and for that purpose to appoint a receiver with full power and authority under the direction of the court to manage and operate and continue said business, and to adjust all disputes and controversies, settle, sue for, and collect all indebtedness for rentals or otherwise, and to recover all property of the defendant, take an account of the assets and liabilities, and sell the assets and distribute the proceeds thereof among those entitled thereto in their proper order, and thereupon Robert W. Kirby was appointed such receiver, and has since continued the business, supplying the city of Urbana and its inhabitants with water for public, municipal, and domestic use.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The defendant, the Urbana Waterworks Company, entered into a written contract with the city of Urbana, by which the water rates for public and private consumption were determined. The contract continued in force 10 years and at its expiration another contract covering the same ground was entered into for a further period of 10 years, which expired August 6, 1899, and since then there has been no contract schedule fixing rates to the city or to private consumers.

December 12, 1903, the receiver brought suit (5,805) against the city of Urbana to recover compensation for services rendered by the waterworks company from April 1 to August 6, 1899, under the last contract, and reasonable compensation for services rendered by the waterworks company and the receiver since the expiration of that contract. The amount claimed under the last contract is $2,632, with interest from August 6, 1899, which the city of Urbana refuses to pay, upon the alleged ground that the waterworks company neglected and failed, as required by the contract, to furnish water under given pressure for the extinguishment of fires. Of the large number of fires during the time of the last contract, but few have been brought to the attention of the court, and of these only four or five failed to receive water with sufficient pressure, and whether the insufficiency at any time was due to the negligence of the waterworks company or its receiver, or the incapacity of the works, is not satisfactorily shown. The city firemen were few in number, and there is evidence tending to show that the water supply was at times hindered by the manner in which the hose was laid and the way in which hydrants were sometimes opened by inexperienced men—spectators.

However, it is urged that tests were made which show that the forcing capacity of the pumps was insufficient to comply with the requirements of the contract, and that therefore the complainant is not entitled to the compensation claimed for services rendered from April 1 to August 6, 1899. But there is testimony showing that the water supply, carried to the extreme of the forcing capacity provided in the contract, would seriously injure the private water service. This question was presented to the Circuit Court of Appeals of the Eighth Circuit, and that court held:

"That the trial court was right in holding the evidence showed that the maintenance of the pressure sought by the city would be injurious to the service pipes and the plumbing in the buildings of the city, and that, as private consumers were furnished through the same mains that afforded fire protection, it could not have been contemplated that a pressure should be maintained for one which would be destructive of the other, and this notwithstanding there was language in the contract and ordinances tending to the contrary." Omaha Water Company v. City of Omaha, 156 Fed. 925, 85 C. C. A. 54.

Among others, Mr. Hill, an expert witness called by the city of Urbana, testified upon this point as follows:

"Q. I will ask you to tell the court, take a pressure of 160 to 200 pounds, applied at the domestic service and to the fixtures in various parts of the city—would not that be dangerous to the fixtures and to the domestic service?

"A. Not dangerous in the sense that it would do any damage to life. It might do some damage to property if the fittings were blown off and the water allowed to flow.

"Q. In other words, such a pressure as that would show a rather reckless disregard for the private service: There would be, besides, an expense to property?

"A. That is true, and that is one of the conditions incident to direct service work—one of the objections.

"Q. What do you mean by 'direct service' work?

"A. That is one in which the water is pumped from the source of supply directly into the distribution system, without the intervention of a reservoir, or standpipe. In cases of direct pressure—direct service, I mean—the pressure is fixed throughout the system by the pressure maintained at the pumping station. If the pressure declines at the pumping station, then it declines correspondingly throughout the system; if it is raised, it is raised correspondingly. But that is a feature incidental to pumping directly into the main to supply consumers.

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

"Q. The direct systems of hydrant service are intended to supply the pressure without the intervention of a fire engine?

"A. Exactly: to take the place of a fire engine.

"Q. Where there is direct pressure, it obviates the necessity for a fire engine, if the pressure is sufficient?

"A. That is the intention."

(Record of Testimony, 321, 322.)

It is also urged by counsel for the complainant that the city of Urbana was estopped from making the defense in view of the fact that the test was not applied until about two months before the termination of the contract, when, as suggested by counsel for the complainant, the defendant might get rid of payment for water service thereafter until August 6, 1899. The evidence shows that tests were made in 1895 and in 1896 which the complainant failed to meet, yet the city continued to accept the water service until May 15, 1899, showing that until then the city accepted the service as a substantial compliance with the contract, and the change of front so short a time before the expiration of the contract was not inspired by a desire to make a material change of the service so long acquiesced in, and the evidence fails to show that there was any substantial change in the character of the service thereafter.

The claim made by the city of Urbana that the failure of the waterworks company in May, 1899, to meet the test subjected it to a forfeiture of the rental pending compliance with the contract, is not supported by the requirement of section 12 of the ordinance of the city of Urbana of July, 1888, which provides that if on test—

"it be found that \* \* \* said company is not substantially complying with the terms and provisions of this contract, notice to that effect shall forthwith be served by the city council upon the president, secretary or managing agent of said company, and from and after service of such notice rental shall cease and not again begin to accrue until said system has been, in respect to such deficiency, brought up to the standard herein required; and all rental for the intervening period shall be forfeited to the city."

It is not shown either by the answer or the evidence that the notice required by the ordinance was ever served upon the president, secretary, or managing agent of the waterworks company and the rental only ceases and is forfeited to the city after service of such notice. The court finds that there is justly due to the receiver for service rendered by the waterworks company from April 1 to August 8, 1899, $2,632, with interest thereon from August 8, 1899.

The compensation claimed in the bill for services rendered to the city of Urbana from August 8, 1899, to February 22, 1904, is reasonable, and will be allowed, with interest, subject to the payments made from time to time as shown by the exhibits attached to the bill.

The next question for consideration is: What would be fair compensation for the water service rendered to the city of Urbana since February 22, 1904, and what rates should be charged for the service in the future?

It is well established that fair compensation for such service includes operating expenses, taxes, cost of administration, and a fair yearly allowance for the maintenance of the plant and such return on the value of the capital and property employed as is just and reasonable. Upon consideration of the testimony of the experts, Hays, Williams, Mead, and Hill, I am of the opinion that the fair reproduction value of the property is $155,000, to which should be added $25,000, as the "going value" of the property, the definition of which is given by Justice Brewer as follows:

"That fact that it is a system in operation, not only with capacity to supply the city, but actually supplying many buildings in the city, not only with a capacity to earn, but actually earning, makes it true that 'the fair and equitable value' is something in excess of the cost of reproduction. * * * It should pay therefore not merely the value of a system which might be made to earn, but that of a system which does earn." National Waterworks Co. v. Kansas City, 62 Fed. 865, 10 C. C. A. 665, 27 L. R. A. 827.

The total value therefore is $180,000.

The yearly income to which the waterworks is entitled for services rendered and expenses incurred from February 22, 1904, to the present time is itemized as follows:

| | |
|---|---|
| Taxes and operating expenses | $11,556 00 |
| Maintenance fund | 1,800 00 |
| Administration fund | 2,000 00 |
| 6% on $180,000.00 | 10,800 00 |
| Total | $26,156 00 |

And it is fairly shown in the apportionment of the cost of the hydrant service and of the private service 45 per cent. should be paid by the city, and 55 per cent. by the private consumers, and 45 per cent. of $26,156 is $11,770.20, being the amount due and to become due, from the city to the waterworks each year, from February 22, 1904, until the close of the receivership, unless changed by order of the court; each installment to bear interest from maturity. The water furnished in the public buildings, watering troughs, drinking fountains, etc., to be paid for by the city at the rates to private consumers for similar service.

The proposed increase of rates to private consumers is reasonable, and the receiver is authorized by the court to promulgate the new schedule prepared by him and which was temporarily withheld by the order of the court.

Decree will be entered in accordance with these rulings.