---

In re HILL et al.

(District Court, E. D. Pennsylvania. May 3, 1911.)

No. 3,151.

1. BANKRUPTCY (§ 290*)—CLAIMS—DEFENSES—AVAILABILITY TO TRUSTEE.

Where a claim against a bankrupt's estate was based on a note given by her in a marginal gambling transaction, the defense that it was based on an illegal consideration was available to her, and was, therefore, available to her trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 290.*]

2. BILLS AND NOTES (§ 497*)—TRANSFER—HOLDER FOR VALUE—BURDEN OF PROOF.

Both Negotiable Instruments Law N. Y. (Laws 1897, c. 612) § 98, and Negotiable Instruments Law Pa. 1901, § 59 (P. L. 202), provide that every holder is deemed prima facie to be a holder in due course, but when it is shown that the title of any person who has negotiated the instrument is defective the burden is on the holder to prove that he, or some person under whom he claims, acquired the title as a holder in due course. Act N. Y. § 91, and Act Pa. § 52, declare that a holder in due course is one who has taken the instrument, which is complete and regular on its face, before maturity and without notice of previous dishonor, if dishonored, in good faith and for value, and without notice of any infirmity in the instrument or defect in the title of the person

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

negotiating it. *Held*, that where the payee of a note given for a gambling debt transferred it to claimant before maturity for an inadequate consideration, on proof that the note was founded on an illegal consideration, the burden of showing that claimant was a holder in due course shifted to him, both under the negotiable instruments law and independent thereof by the law merchant.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1675–1687; Dec. Dig. § 497.*]

3. BILLS AND NOTES (§ 354*)—TRANSFER—CONSIDERATION—HOLDER IN DUE COURSE.

Notes aggregating $34,800, with interest, having been executed by a bankrupt to cover losses in marginal gambling transactions, were transferred by the payee to claimant before maturity in consideration of $300 cash, a note for $200, which was afterwards paid, and mining stock of the par value of $11,000, but having no market value, and only a problematical value in fact. *Held*, that the consideration for the transfer was not sufficient to indicate that claimant was a holder of the notes in due course.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 904, 905; Dec. Dig. § 354.*]

In the matter of bankruptcy proceedings against William J. Hill and others, individually and trading as William Hill & Sons. On certificate of the referee to review an order expunging the claim of Thomas W. Young as against the individual estate of Ellen Hill. Affirmed.

John E. Sibble and George J. Edwards, Jr., for trustee.
A. Kerr McCullugh, for claimant.

J. B. McPHERSON, District Judge. The referee expunged the claim of Thomas W. Young against the individual estate of Ellen Hill, and the correctness of this action is the question for decision. The claim rests upon three promissory notes, all dated New York, May 5, 1908, at 30, 60, and 90 days, respectively, and aggregates $34,800, with interest. The notes were made by Ellen Hill, to her own order, indorsed by her in blank, and delivered to her son-in-law, Robert Winsmore, who sold them to the claimant before maturity for $300 in cash, a note for $200 (which was afterwards paid), and mining stock having a par value of $11,000, but no market value, and, so far as appears in the evidence, only problematical value in fact. The foundation of the referee's decision is "that the claimant has not proved that he is a holder of these notes in good faith and for value, and without notice of any defect in the title," and the claimant attacks this conclusion on the ground that the burden of proof has thus been put upon the wrong party. If this contention is unsound, and if the referee has weighed the testimony according to the proper standard, his findings of fact are entitled to much weight, and should not be lightly disregarded.

[1] The execution of the notes was admitted, and therefore when the claimant produced them his prima facie case was completely established. He was presumed to be a holder in good faith and for value before maturity, and the trustee was called upon to defend. This he did by presenting evidence which satisfied the referee—and, indeed, it is not denied—that the notes were given by Mrs. Hill to Winsmore in the settlement of marginal gambling transactions, and were there-

fore founded upon an illegal consideration. This was a defense of which Mrs. Hill could have availed herself in a suit by Winsmore, and it is therefore available by her trustee. With the controversy in that situation, upon whom was the burden of further proof? Was it necessary for the trustee to go forward and prove affirmatively that Young did not acquire the notes in good faith and for value without notice, or did the burden shift at this point and lay upon Young a similar affirmative obligation? If the burden was shifted to Young, he failed to carry it to the referee's satisfaction; but, if the burden was properly upon the trustee, the referee has apparently applied the wrong rule.

[2] Two views of this question may be taken. In one of them the negotiable instruments act is I think decisive. This statute governs the notes in controversy, whether they are New York or Pennsylvania contracts (and the evidence leaves that subject in doubt), for both states adopted the act several years before the notes were made. Section 98 in New York (Laws N. Y. 1897, c. 612) and section 59 in Pennsylvania (P. L. 1901, p. 202) alike provide:

"Every holder is deemed, prima facie, to be a holder in due course; but, when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course. *  *  * "

And a holder in due course (section 91, N. Y.; section 52, Pa.) must have—

"taken the instrument under the following conditions:
"(1) That it is complete and regular upon its face.
"(2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact.
"(3) That he took it in good faith and for value.
"(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

I shall assume that a holder in due course of a note given for a gambling debt may recover the full amount thereof against the maker, although there are some decisions to the contrary (Crawford, Negotiable Instruments Act [3d Ed.] pp. 71–74); but it seems clear that, even where he may thus recover, he must affirmatively prove that he holds in due course, as soon as it has been shown that the title of any person who has negotiated the instrument was defective. Therefore, since Winsmore's title was undoubtedly shown to be defective, either of these statutes expressly shifts the burden of proof to Young; and this is so plain that no argument is necessary. Bank v. Hoffman, 229 Pa. 432, 78 Atl. 1002. See, also, Vosburgh v. Diefendorf (1890) 119 N. Y. 357, 23 N. E. 801, 16 Am. St. Rep. 836; Bank v. Diefendorf (1890) 123 N. Y. 191, 25 N. E. 402, 10 L. R. A. 676. It follows that if the present dispute is to be decided by the statute law, either of New York or of Pennsylvania, the claimant was properly required to prove affirmatively that he was a holder for value in good faith and without notice.

But if it be assumed that the statutes are to be laid aside, on the ground that this is a question of general commercial law, upon which the federal courts may follow their own decisions in spite of the stat-

utes—a question that was stated, but not decided, in Forrest v. Safety Banking Co. (C. C.) 174 Fed. 348—I am still of opinion that the order expunging the claim was right. The rules in the federal courts are thus summarized in a recent case—King v. Doane, 139 U. S. 173, 11 Sup. Ct. 467 (35 L. Ed. 84)—where "the established rule" is stated to be:

"If, in an action by an indorsee against the maker, a negotiable note is shown to have been obtained by fraud, the presumption, arising merely from the possession of the instrument, that the holder in good faith paid value, is so far overcome that he cannot have judgment unless it appears affirmatively from all the evidence, whether produced by the one side or the other, that he, in fact, purchased for value. Smith v. Sac County, 11 Wall. 139, 148 [20 L. Ed. 102]; Commissioners v. Clark, 94 U. S. 278, 285 [24 L. Ed. 59]; Stewart v. Lansing, 104 U. S. 505, 509 [26 L. Ed. 866]; Pana v. Bowler, 107 U. S. 529, 542 [2 Sup. Ct. 704, 27 L. Ed. 424]. In the case supposed he must show that he paid value. That fact being established, he will be entitled to recover, unless it is proved that he purchased with actual notice of defect in the title, or in bad faith, implying guilty knowledge or willful ignorance. Goodman v. Simonds, 20 How. 343, 367 [15 L. Ed. 934]; Murray v. Lardner, 2 Wall. 110, 121 [17 L. Ed. 857]; Hotchkiss v. National Bank, 21 Wall. 354, 359 [22 L. Ed. 645]; New Orleans v. Montgomery, 95 U. S. 18 [24 L. Ed. 346]; Swift v. Smith, 102 U. S. 442, 444 [26 L. Ed. 193]."

See, also, Baker v. Wood, 157 U. S. 216, 15 Sup. Ct. 577, 39 L. Ed. 677.

If this is the rule to be applied, it became necessary for Young, after the illegality of the note had been shown, to prove affirmatively that he had in fact purchased for value; and upon this point I should certainly be disposed to hold that upon all the evidence it did not appear affirmatively that he had paid value. In King v. Doane, supra, the holder proved that he had paid value, and the court repeated the well-known rule that full value need not be paid:

"And the rule that protects a bona fide holder for value of commercial paper against defenses or equities that might be good as between the original parties does not require that the holder shall have paid full value."

But it is immediately added (139 U. S. 174, 11 Sup. Ct. 468, 35 L. Ed. 84):

"We do not mean to say that the real amount of the consideration paid by the holder may not under some circumstances be important in determining whether, within the rule adverted to, he paid value. The amount paid may have been so disproportionate to the real value of the security purchased that the claim to have paid value will be treated as a mere pretense, and the security as having been obtained without paying anything for it."

[3] It is this aspect of the case to which I now refer. The actual value transferred by Young was apparently so disproportionate that it is well-nigh impossible to avoid the conclusion that his claim to have paid value is little more than a pretense. At all events, it may fairly be said, I think, that he did not sustain the burden of proof in this regard. On the general subject of the presumptions that obtain in suits upon commercial paper, I also refer to the notes in 10 L. R. A. 676, and 17 L. R. A. 326, and to 8 Cyc. 235 et seq.

In either view of the question, therefore, I think the referee was right in expunging the claim, and accordingly his order is affirmed.