Butler Fair and Agricultural Association, Appellant, *v.* Butler School District, Appellant.

170

Argued March 26, 1957.   Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Lee C. McCandless*, for judgment creditor and for assignee.

*John H. Marshall*, with him *John H. Jackson, Charles E. Dillon, James E. Marshall, Harry K. Mc-*

*Namee,* and *Marshall, Marshall & McNamee,* for Butler School District.

Opinion by Mr. Justice Benjamin R. Jones, May 29, 1957:

These three appeals arise from a controversy between a debtor-school district, a creditor-fair association and an assignee of the creditor-fair association concerning the payment of an award made in an eminent domain proceeding.

In 1955, Butler Fair and Agriculture Association (hereinafter called Association) was the owner of a leasehold which would expire in 1970. This leasehold covered 67 acres of ground in Butler County upon which the Association, and its predecessor, had operated a county fair for approximately fifty years, and upon which were located approximately forty buildings used for fair purposes.

In August, 1955, the School District of the City of Butler (hereinafter called District), on behalf of itself and eight other districts comprising a Jointure, condemned the land covered by the Association's leasehold and entered into an agreement with the land owners for the purchase of their fee simple interest, subject to the leasehold.

On November 7, 1955, a Board of Viewers awarded the Association $160,000 as the damages sustained by reason of the District's condemnation of its leasehold interest and this award was confirmed by the Court on April 3, 1956. After a stipulation that the Association was to have the right to remove all its buildings from the land, the award was reduced to a final judgment in favor of the Association and against the District which was entered on April 5, 1956.

On April 30, 1956, the District certified to the Association that provision had been made in its 1956-57

school budget for payment of the amount of the judgment. For the purpose of enabling the Association to purchase other ground for its purposes, on April 30, 1956, one Philip Chambers loaned $60,000 to the Association and received as collateral the Association's judgment against the District. The Association on the same day assigned "all its right, title and interest in the principal and interest" in the judgment to Chambers. Chambers entered a judgment against the Association on May 14, 1956. The District was notified, in writing, on May 17, 1956 by the Association of its assignment of the judgment against the District to Chambers. It was not until January 28, 1957 that the assignment from the Association to Chambers was entered formally of record.

Undoubtedly, upon the receipt of its tax money, the District would have paid the Association's judgment and the Chambers loan would have been repaid and his judgment satisfied were it not for the fact that on June 13, 1956, an equity suit was instituted by certain stockholders of the Association's predecessor against the Association, certain of its officers and directors and the District. This equity suit set in motion the chain of events which led to the institution of three different lawsuits which have now resulted in the present appeals.

The Butler Fair and Exposition (hereinafter called Exposition), a Pennsylvania business corporation, was incorporated in 1925, for the purpose of conducting a county fair. In October, 1945, the Exposition owned certain assets including cash, a leasehold on the fair grounds and certain buildings thereon. On October 22, 1945, the Exposition's directors voted to recommend to the Exposition's stockholders that the corporation be dissolved and that a sale of its assets be made to one Richards, a director and Exposition's largest stock-

holder, subject to the stockholders' approval. By a majority vote the stockholders voted to dissolve the corporation and sale of the Exposition's assets was made. Eventually the assets passed from the Exposition to the Present Association.

Alleging that this sale—which took place eleven years previously—was fraudulent in that the fact of renewal of the leasehold was concealed, three former Exposition stockholders, representing fourteen shares, on June 13, 1956, filed a complaint in equity against the Association, the District and ten individuals who were former directors and officers of Exposition, seeking—insofar as relevant herein—a stay of the eminent domain proceedings, a declaration that the Exposition stockholders were entitled to the Board of Viewers' award and that they were the owners of the Association's assets together with an injunction against the District restraining it from paying over to the Association any money in satisfaction of the Association's judgment. Preliminary objections filed by the Association were sustained by the court below on January 22, 1957. It has been represented to us that an appeal has been taken from this action of the court below, which appeal has not yet been heard and, of course, is not involved in this proceeding.

On June 29, 1956—approximately two weeks subsequent to entry of the equity suit—on the theory that because of the equity suit it stood in a position of being subjected to multiple liability and that it could not determine the persons entitled to payment of the judgment, the District requested the court for permission to pay the money into court, under the Act of 1949.[1] The lower court, on September 28, 1956, refused to permit the District to pay the money into court and di-

---

[1] Act of March 10, 1949, P. L. 30, Art. VII, §726, 24 PS §7-726.

rected it to be paid to the Association. Upon exceptions filed, the court below, on January 23, 1957, reversed its previous order and directed the District to pay the money into court. From this order the Association has appealed.

On December 5, 1956, the District filed a petition for an interpleader, under the Act of 1949, supra, and the Rules of Civil Procedure,[2] seeking to have the equity suit plaintiffs, the Association and Chambers interpleaded and requesting permission to pay the money into court. The lower court, on January 21, 1957, refused the interpleader petition. From that order the District has appealed.

On January 11, 1957, Chambers—the Association's assignee—petitioned the court, under the Act of 1949, supra,[3] to issue a writ in the nature of a mandamus against the District directing it to pay the amount of the Association's judgment. The court, on February 13, 1957, dismissed this petition. From the order of dismissal Chambers has taken an appeal.

Each appeal will be considered seriatim.

### The Association's Appeal From The Order Permitting The District To Pay The Money Into Court.

On August 8, 1956—eight weeks after the institution of the equity suit—the District petitioned the Court of Common Pleas of Butler County, under the authority of the Act of March 10, 1949, supra,[4] for permission to pay into court, or to a bank in escrow, the amount of the judgment ($160,000) together with interest ($3600). After reciting the details of the

[2] Pa. R. C. P. 2302-2306, inc.

[3] Act of March 10, 1949, supra, Art. VI, §611, 24 PS §6-611.

[4] Note 1, supra.

eminent domain proceedings instituted against it by the Association and the District's readiness and ability to pay the amount of the judgment and interest, the District alleged that, because of the equity action instituted against the Association and its officers and directors, in which the District had been joined as a party defendant, the District stood in danger of multiple liability to the Association and the equity suit plaintiffs and the District was unable to determine the persons legally entitled to the amount of the judgment.

The Association filed an answer to this petition wherein it averred that the District was not subject to multiple liability, that the District was able to determine the persons entitled to the amount of the judgment, that the equity suit was not lis pendens and that the Act of 1949, supra, was not applicable.

On September 28, 1956, in refusing the District's petition to pay the amount of the judgment into court and directing the District to pay the Association, the court below said inter alia, "This court finds no reason in law why the amount of the award should not now be paid to the Butler Fair and Agricultural Association, and finds no legal reason why said money should be paid into court, thus depriving the Butler Fair and Agricultural Association of the use thereof". The court below further indicated that the equity suit was not a lien on the leasehold, that the Association was legally entitled to payment of the judgment and that the District would not be subjected to multiple liability.

On January 23, 1957, the court below, in reversing itself and ordering the District to pay the amount due on the judgment into court, then held that the mere pendency of the equity suit placed the District in a position of danger of multiple liability, and rendered dubious the person or persons legally entitled to payment of the judgment.

The authority of the court to entertain and act upon the District's petition arose from the Act of 1949, supra. This statute, which confers the power of eminent domain upon the District, must be strictly construed: Statutory Construction Act of May 28, 1937, P. L. 1019, Art. IV, §58, 46 PS §558; *Lance's Appeal,* 55 Pa. 16. The pertinent section of the 1949 statute provides: "If on account of any liens existing against such premises, or if the actual owners thereof cannot be found, or if the owners or any of them refuse the amount awarded by such report, or if, for any other reason, the school district cannot pay the sum awarded for such damages to the person legally entitled thereto, it may pay the same into court, and thereafter the owners of such premises or its lien creditors shall look to said fund for all damages accruing to them on account of the taking of said property." Unless within the language of this statutory provision the Court is empowered to act under the circumstances of this case, its order must fall. It is obvious that the equity suit plaintiffs have no lien against the premises, that the District knows the whereabouts of all claimants and that neither the Association nor the equity suit plaintiffs have refused the amount of the award. Consequently, the first three stated bases for invoking the Act are clearly absent. The District must rest its right, if any, to affirmative action under this statute upon the phrase "or if, for any other reason". To bring itself within the statute, the District contends that its possible subjection to double liability and its uncertainty as to the persons legally entitled to the award afford a "reason" within the statutory definition.

The Statutory Construction Act of 1937, supra, §33, provides: "General words shall be construed to take their meanings and be restricted by preceding particu-

lar words". The late President Judge Rice, speaking for the court, in *Corry v. The Corry Chair Co.*, 18 Pa. Superior Ct. 271, 277, said: "The general word which follows particular and specific words of the same nature as itself often takes its meaning from them, and often is presumed to be restricted to the same genus as those words, or, in other words, as comprehending only things of the same kind as those designated by them, unless there is something to show that a wider sense was intended: Endlich on Interpretation of Statutes, sec. 405."

In *Frederick's Estate*, 333 Pa. 327, 331, 5 A. 2d 91, it was stated: "General expressions used in a statute are restricted to things and persons similar to those specifically enumerated in the language preceding the general expressions: Derk v. Zerbe Twp., 322 Pa. 350, 185 A. 647."

*In re Hurlbut's Estate*, 44 N. Y. Supp. 2d 450, the phrase, "for any other reason", was presented for interpretation. The court therein was interpreting a statute which authorized a surrogate, in his discretion, to allow testamentary trustees additional compensation "if the trustee's duties have been unusually difficult or burdensome" and if, "for any other reason", the trustee's commissions were inadequate. The court limited the phrase in its meaning to specific cases within the class referred to in the immediate prior phrase in the statute.

A consideration of the Act of 1949, supra, indicates that it was the legislative intent, by the use of the phrase "for any other reason", to limit it to a meaning within the class which immediately precedes this phrase. Such a restriction is further justified by reference to the provision at the end of this section of the statute which provides that "thereafter the owners of such premises or its lien creditors" shall look to the fund

for damages. Certainly the equity suit plaintiffs are not lienholders and the theory of their equity suit is not that they were the owners of the fund but rather that the fund should be impressed with a trust in favor of the Exposition stockholders and the Association should be directed to hold the fund for them and other Exposition stockholders as a trustee ex maleficio. The phrase "for any other reason" cannot be divorced either from the phrase which follows it or from the phrase which precedes it. Any other construction would allow the payment into court of an eminent domain award under any and all circumstances.

*Levin et al. v. Pittsburgh United Corporation et al.,* 330 Pa. 457, 199 A. 332; *Deckert's Appeal,* 5 W. & S. 342; and *Youngs v. Stoddard,* 27 App. Div. 162, 50 N. Y. Supp. 475 are clearly inapposite to the instant situation which involves the construction and interpretation of an enabling statutory provision.

A required strict construction of this statute gave the court below no authority to direct the payment of this fund into court and the court below erred in its order.

Chambers' Appeal From The Order Of Court Denying A Writ In The Nature Of Mandamus.

Reference was previously made in this opinion to the fact that prior to the entry of the equity action the Association had made a complete assignment of its judgment against the District to Chambers as collateral for his loan. Approximately a month prior to the equity suit Chambers' judgment had been entered against the Association and the District had been duly notified not only of Chambers' judgment against the Association but also of the complete assignment of. the Association's judgment against the District. *On the*

*date of entry of the equity suit, the District had knowledge of the Association's judgment against it, that Chambers had a judgment against the Association and that the Association's judgment was assigned to Chambers.*

At the time that Chambers' petition to enforce the Association's judgment against the District was presented to the court, the District had not yet been permitted to pay the amount of the award into court although proceedings for that purpose were pending. It was not until twelve days after Chambers' petition was presented to court that the District was permitted to pay the amount of the award into court.

Chambers petitioned the court for the enforcement of the Association judgment against the District under the authority of the Act of 1949, supra,[5] which provides: "Enforcement of judgments against School districts—If any judgment is obtained against any school district and the same is not paid as required, the same may be collected as follows and not otherwise:—The plaintiff in any such judgment shall petition the court of common pleas in which such judgment was obtained . . . whereupon the court shall issue a writ in the nature of a mandamus execution, directed to the directors and treasurers of the school district against which such judgment was obtained, commanding them to pay the amount of such judgment, together with interest and costs . . . The court may enforce obedience to such writ by attachment on proper cause being shown."

The court permitted the District to file an answer which set forth: (1) that when this petition was presented all proceedings on the Association's judgment had been stayed by order of court; (2) that Chambers was not a judgment creditor of the District, the assign-

---

[5] Note 3, supra.

ment not having been entered until 17 days after presentation of this petition; (3) that the issue was moot because the fund had been paid into court; (4) that payment into court relieved the District of its obligation either to the Association and/or Chambers.

The court below refused to enforce payment of the judgment on the grounds that since the fund had been paid into court the matter was moot and that Chambers had the right to petition the court to dispose of the fund and to prove his claim.[6] An examination of the District's defense as set forth in its answer[7] indicates its debility: (1) the same court which stayed proceedings on the judgment allowed filing of the petition; (2) although the Association's assignment of the judgment to Chambers was not entered of record until after presentation of the petition, yet the District had full knowledge, in writing, six months prior to the petition that the Association's judgment had been assigned to Chambers; (3) the order directing payment of the fund into court was not made until twelve days after the Chambers' petition was presented to the court; (4) payment into court of the amount of the award did not act as a release of the District if the order directing such payment was erroneously made.

If Chambers is to be considered under the statute as the "plaintiff" in the judgment, clearly, he was entitled to this summary process at the hands of the court. While at common law the assignee of a judgment was not permitted to bring an action thereon in his own name (*Baker v. Wood*, 157 U. S. 212, 39 L. Ed. 677, 15 S. Ct. 577; *Howes v. Scott*, 224 Pa. 7,

---

[6] Query: Had Chambers followed the court's suggestion, would he not have been met with the previously determined proposition that he would have to await final conclusion of the equity suit?

[7] It is a matter of very serious doubt whether, under the statute, the District had the right to file an answer.

73 A. 186), the rule today is that "all actions shall be prosecuted by and in the name of the real party in interest . . .". (Pa. R. C. P. 2002 (a)). Sub-division (c) of Rule 2002 provides an exception to the general rule where a statute or ordinance provides otherwise. The instant statute does not provide an exception to the general rule: *Steinert v. Galasso,* 363 Pa. 393, 69 A. 2d 841. (Cf.: statutes such as the Act of June 23, 1931, P. L. 1181, §1, 8 PS §146; Act of May 4, 1927, P. L. 519, Art. XII, §1202, Cl. LIV, 53 PS §13,366 and similar legislation).

When this judgment was assigned it divested the assignor of all its interest therein and necessarily carried with it all the interest of the assignor in the judgments and its incidents. Chambers, as assignee, became the real party in interest and in him was vested the power to control the action or discharge the cause of action which was being enforced by his suit. The assignment of this judgment gave to Chambers, as assignee, the right to employ every remedy available as a means of enforcing the judgment. The "plaintiff" in a judgment under the statutory provisions is the "real party in interest". Chambers as the "real party in interest" had the right under this statute to enforce payment of his judgment against the school district.

Under the theory of the court below, the matter became moot and Chambers deprived of his rights under the enforcement statute by reason of a proceeding to which Chambers was not a party and in which he neither took part nor had any opportunity to take part.

The record indicates that the Association granted Chambers by the execution of the assignment its entire right, title and interest in the judgment. It was a complete, not a partial, assignment; the authorities

relied on by the District, such as *Gordon, Secretary of Banking v. Hartford Sterling Co.*, 319 Pa. 174, 179 A. 234, deal with partial assignments and are, therefore inapplicable.

The court below indicated that Chambers had a remedy in that he could proceed to present his claim against the fund itself. Assuming arguendo, that Chambers had adopted such a procedure he would have encountered two obstacles: (1) the Act of 1949, supra, by its terms provides the exclusive remedy to enforce the judgment against the District and (2), even if Chambers had offered to prove the recorded and unsatisfied judgment and his ownership thereof by way of assignment, he still could not have enforced the judgment until the equity proceeding was finally concluded.

Chambers was clearly entitled to the enforcement of the judgment and the court below's refusal to grant such enforcement was erroneous.

The School District's Appeal From The Refusal Of The Court Below To Grant An Interpleader.

Over seven months subsequent to the entry of the judgment against it—six months subsequent to the institution of the equity proceedings and seven weeks after the court had originally refused to permit the District to pay the amount of the award into court—the District presented a petition to the court seeking an interpleader which the court below refused.

This petition was brought under the authority of the Act of 1949, supra, §726, and under the Rules of Civil Procedure governing interpleader by defendants. *At the time it was presented there was still pending before the court in a proceeding to No. 109 June Term, 1956—the same number and term—the District's petition to pay the amount of the award into court.*

A petition for interpleader, either at law or in equity must be presented by a "defendant", that is, a "party originally named as a defendant, any party added to the record as a defendant and any plaintiff against whom a counterclaim or setoff is asserted" (Pa. R. C. P. 2301, 2302). The District invokes the aid of this rule by petitioning in the proceeding in which the judgment was entered against it as defendant.

At the time the petition was presented there was only one other suit instituted in which the District was a defendant, to wit, the equity proceedings instituted in the Court of Common Pleas of Butler County, sitting in equity, No. 3 June Term, 1956. Pa. R. C. P. 2306(b) provides "If the defendant petitions to interplead claimants who in good faith and without collusion have started independent actions against the defendant in the same or different courts, the court in which the petition for interpleader is filed (1) shall grant the petition *where otherwise proper under these rules* if the petition is filed in the first action commenced against the defendant;". (Emphasis supplied)

One of the important prerequisites in interpleader proceedings, under Pa. R. C. P. 2303, is that a claimant has made or is expected to make a demand upon the defendant as a result of which the defendant is or may be exposed to double or multiple liability to the plaintiff and to such claimant as to all or any part of the claim asserted by the plaintiff. "In order to interplead a third person his claim must be adverse to the claim of the original plaintiff and must be of such a nature that its prosecution in addition to the claim of the original plaintiff may expose the defendant to double or multiple liability": Goodrich-Amram Standard Pennsylvania Practice, §2303(a)-3.

The District's petition for interpleader sought to interplead not only the Association, but also the equity

suit plaintiffs and Chambers. The petition sets forth at length the nature of the claims both of the equity suit plaintiffs and of Chambers.

An examination of the claim of plaintiffs in the equity suit indicates that what they seek is to have the fund represented by the amount of the award *when paid* by the District impressed with a trust for them and other shareholders of the old Exposition Company; it is not and cannot be the theory of their claim that the monies should not be paid to the Association but rather that the monies *when paid* should be declared held by the Association as a trustee ex maleficio for them and other Exposition stockholders.

The claim of Chambers is not adverse to the claim of the Association and what transpires concerning the disposition of the monies when paid between Chambers and the Association is of no moment to the District.

An examination of the averments of the petition for interpleader indicates that the District by reason of these claims is not put in danger of double or multiple liability and therefore the proceedings lack that essential element.

It is particularly noted that when the District presented its petition for interpleader there was still pending a proceeding instituted by it which had as its goal and purpose the same result to be attained by the interpleader proceedings.

The words of the court below are most apt: "On the other hand, interpleader proceedings would seem to be inappropriate so far as the equity plaintiffs are concerned. If the interpleader is granted, those plaintiffs will be required to abandon their equity case and litigate their claim against the School District in the judgment proceeding. This would be an entirely inept method of establishing their claim. In fact, they can only obtain a valid claim against the School District

at all in the event that they first win their equity case.

"The situation presented is a dilemma, in which the strict application of the procedural rules seems to make the granting of the petition for interpleader mandatory, whereas interpleader is completely inappropriate because it forces the equity plaintiffs to litigate their claim in the judgment proceeding, which is utterly unadapted to that purpose.

"If we were forced to decide between their alternatives, we would hold the interpleader proceeding to be inappropriate and dismiss the petition for this reason."

The court below was not mandated under the circumstances to grant the petition for interpleader. No adversity of claims between the Association and Chambers has been shown and the claim of the equity suit plaintiffs concerns not the payment of the money, but rather the disposition of the money when paid to the Association.

Insofar as Chambers is concerned he is the owner of an assignment from the Association of all its right, title and interest in a final judgment evidencing the District's obligation to pay the Association. Chambers loaned this money on the basis of a final judgment at a time when no liens or other encumbrances appeared of record and no claims of any nature whatsoever had been made concerning this fund. To grant a preference in this fund to the equity plaintiffs as against Chambers would have the effect of requiring every person loaning money to a corporation to make a complete and searching investigation into the entire history of the corporation, its predecessors, if any, its affairs and, even then, such a lender would not be protected under the theory advanced in this litigation.

Without filing any bond or securing any injunctive relief the equity suit plaintiffs have managed to hold

up the payment of this judgment for many months. It is a situation which calls for immediate corrective action. Payment of the amount of the fund to Chambers and the Association can be made and at the same time the District fully protected against double or multiple liability by an appropriate order of court.

In the event that the equity suit plaintiffs succeed in their litigation, a trust can be impressed upon the funds or assets in the hands of the Association. That Chambers will have to be repaid that which he loaned the Association out of this fund is of no concern; it was not until long after the loan had been made that the equity suit plaintiffs took any action toward protecting their claim. As between an innocent lender of money and the equity suit plaintiffs who gave no notice of any claims on their part, the latter and not the former must suffer.

The appeals of the Association and Chambers are sustained and the orders of the court below from which they have appealed are reversed.

The appeal of the School District is dismissed and the order of the court below from which it appealed is affirmed.

The costs in all appeals are placed on the District.